IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN YOUNGER,                    *

    Plaintiff                    *

    v.                           *            Civil Action No. RDB-16-3269

STATE OF MARYLAND, *et al.*,      *

    Defendants.                  *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Kevin Younger ("Plaintiff" or "Younger"), "a prisoner in the Maryland Division of Correction housed at the Maryland Reception, Diagnostic & Classification Center ("MRDCC")," has brought this action against the State of Maryland, current Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") Stephen T. Moyer ("Secretary Moyer"), in his *official* capacity[1], and former MRDCC Warden Tyrone Crowder ("Crowder")[2] (collectively the "State Defendants"); MRDCC "supervisory correctional officers[s]" Pamela Dixon ("Dixon"), Wallace Singletary ("Singletary"), and Neil Dupree ("Dupree"); and MRDCC "correctional officer[s]" Jemiah Green ("Green"), Richard Hanna ("Hanna"), and Kwasi Ramsey ("Ramsey"). Compl., ¶¶ 1-

---

[1] Secretary Moyer did not yet hold the office of Secretary of the Maryland Department of Public Safety and Correctional Services at the time of the facts alleged in the Complaint. Rather, former Secretary Gary D. Maynard was the DPSCS Secretary at that time. Younger has sued Moyer "in his official capacity . . . in the shoes of his predecessors," although he has subsequently clarified in his Response to the pending motions that he also seeks to sue Moyer in his *individual* capacity. *See* Pl. Response, p. 8, ECF No. 67. This Court has addressed both suits herein. Younger has not sued any of the other Defendants, aside from the State of Maryland, in their "official capacities" and has confirmed in his Response brief that he intends to sue them in their *individual* capacities. *Id.*

[2] It is undisputed that Crowder was the Warden of the Maryland Reception, Diagnostic & Classification Center at the time of the events alleged in Younger's Complaint (ECF No. 1).

10, ECF No. 1. Younger alleges violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count One)[3]; Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count Two); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Three);[4] Battery (Count Five); Intentional Infliction of Emotional Distress (Count Six); Conspiracy (Count Seven); Negligent Hiring, Training, and Supervision (Count Eight); Gross Negligence (Count Nine); and Respondeat Superior (Count Ten)[5], in connection with his alleged "assault[ ] and beating" by correctional officers Green, Hanna, and Ramsey on September 30, 2013. *Id.* ¶¶ 37, 100-193.[6]

Currently pending before this Court are the State Defendants' Motion to Dismiss or, *in the alternative*, for Summary Judgment (ECF No. 46) and Defendants Dupree and Singletary's Motion to Dismiss or, *in the alternative*, for Summary Judgment (ECF No. 60).[7] This Court has reviewed the parties' submissions, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, the State Defendants' Motion to Dismiss (ECF No. 46) is GRANTED as to Younger's claims against the State of Maryland

[3] Specifically, Younger alleges violations of his "right to be free from the use of excessive and unreasonable force and seizure," "the right to be free from a deprivation of life and liberty without due process of law," "the right to be free from cruel and unusual punishment," and "the right to be free from deliberate indifference for a serious medical need." *See* Compl., ¶ 102, ECF No. 1.

[4] Articles 16, 24, and 25 of the Maryland Declaration of Rights are interpreted *in pari materia* with their federal counterparts, the Eighth and Fourteenth Amendments to the United States Constitution. *See, e.g., Evans v. State*, 914 A.2d 25, 67 (Md. 2006); *Pitsenberger v. Pitsenberger*, 410 A.2d 1052, 1056 (Md. 1980).

[5] Younger initially brought an assault claim against Defendants Crowder, Ramsey, Green, Hanna, Dixon, Singletary, and Dupree (Count Four), but has since voluntarily dismissed that claim with prejudice. *See* Margin Order, ECF No. 53.

[6] Nicholas Cottman, one of four other prisoners allegedly assaulted by Ramsey, Green, and Hanna on that day, has filed a similar Section 1983 civil rights action in this Court against the State of Maryland, Secretary Moyer, Crowder, Dupree, Green, Hanna, and Ramsey. *See Cottman v. State of Maryland, et al.*, RDB-16-3306.

[7] Defendants Green, Hanna, Ramsey, and Dixon have not moved to dismiss Younger's claims against them. Defendants Hanna and Ramsey have both filed Answers to the Complaint (ECF Nos. 56 & 65). The Clerk of this Court has entered Orders of Default (ECF Nos. 70 & 71) against both Defendants Green and Dixon for failure to plead or otherwise defend.

in Counts Two, Three, Eight, and Ten of the Complaint and Younger's claims against Secretary Moyer, in both his *individual* and *official* capacities, in Counts One and Eight of the Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[8] The State Defendants' Motion to Dismiss (ECF No. 46) is DENIED as to Younger's claims against Crowder in Counts One, Two, Three, Five, Six, Seven, Eight, and Nine of the Complaint, and Dupree and Singletary's Motion to Dismiss (ECF No. 60) is also DENIED as to Younger's claims against them in Counts One, Two, Three, Five, Six, Seven, Eight, and Nine of the Complaint. Additionally, the State Defendants' Motion to Dismiss (ECF No. 46) and Defendants Dupree and Singletary's Motion to Dismiss (ECF No. 60) are both DENIED as to Younger's Conspiracy claim (Count Seven). Therefore, Defendants State of Maryland and Secretary Moyer, in both his *individual* and *official* capacities, are DISMISSED from this action. All other claims against the additional Defendants remain.

## BACKGROUND

At the motion to dismiss stage, this Court accepts as true the facts alleged in the Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Kevin Younger ("Plaintiff" or "Younger") is "a prisoner in the Maryland Division of Correction housed at the Maryland Reception, Diagnostic & Classification Center ("MRDCC")." Compl., ¶ 1, ECF No. 1. "On the evening of September 29, 2013,

---

[8] Although Defendants have moved, in the alternative, for summary judgment, this Court will not convert their motions to motions for summary judgment. Younger has not yet had the benefit of discovery in this case and has requested "an opportunity to either confirm, or obtain facts to rebut, Defendants' assertions." Pl. Response, p. 23, ECF No. 67. "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.' " *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).

[Younger] . . . witnessed a fight between two inmates and a correctional officer in which the correctional officer was seriously injured." *Id.* ¶ 18. Although Younger was not involved in the fight and had "no history of disciplinary infractions at that time," he was removed from general housing and transferred to "various other cells in MRDCC" with "the two inmates who participated in the confrontation" and "at least two other prisoners." *Id.* ¶¶ 18-21.

On the morning of September 30, 2013, Younger alleges that Wallace Singletary ("Singletary"), a "supervisory correctional officer" at MRDCC, ordered Neil Dupree ("Dupree"), also a "supervisory correctional officer," to "print out photographs of the injured correctional officer so that they could be shown to the incoming correctional officers before they began their daily shifts." *Id.* ¶ 24. He claims that former MRDCC Warden Tyrone Crowder ("Crowder") and Dupree displayed the photographs to correctional officers at that morning's "roll call," "effectively sanction[ing] a retaliatory attack against the five prisoners, including [Younger], who they believed were involved in the previous day's altercation," and that Crowder specifically "admonished the correctional officers for their handling of the altercation on the prior day, calling them 'soft' and stating that they 'should [have] beat the inmates' who were allegedly involved in the fight." *Id.* ¶¶ 25-32.

Younger claims that correctional officers Jemiah Green ("Green"), Richard Hanna ("Hanna"), and Kwasi Ramsey ("Ramsey") were present at that roll call, that they were well-known for their "violent enforcement" of prison policies, and that Crowder, Singletary, Dupree, and the Secretary of the Maryland Department of Public Safety and Correctional Services were all well aware of "previous use of force complaints" against them. *Id.* ¶¶ 34-35; 87-91. Following the roll call, he alleges that Green, Hanna, and Ramsey "sought to

exact revenge on the five prisoners, including [Younger]" and "systematically moved about MRDCC . . . brutally assaulting and beating" each one of them, including Younger. *Id.* ¶¶ 36-37. Younger alleges that around 7:00 a.m. on September 30, 2013, Green, Hanna, and Ramsey "entered [his] cell, grabbing [him] by his shirt and legs, and throwing him from the top bunk onto the concrete floor," then proceeded to "strik[e] him on his head, face, and body, with handcuffs, radios, and keys . . . kick[ing] and stomp[ing] [him] as he lay defenseless on the ground." *Id.* ¶¶ 42-44. Younger claims that "supervisory correctional officer" Pamela Dixon ("Dixon") "was seated at the sergeant's desk at the end of the tier . . . in plain view from [his] cell" during the beating. *Id.* ¶ 50. Younger alleges that the officers "left [him] in a pool of blood on the concrete floor of his cell" and proceeded to beat each of the other prisoners whose photographs were displayed in the same way. *Id.* ¶¶ 48-49, 56.

Younger contends that Green eventually returned to transport him to the medical unit and ordered him to write on an Incident Report Form "that he sustained his injuries by falling from his bunk bed." *Id.* ¶¶ 53-54. He claims that Dupree, "[a]s the only supervisory lieutenant," responded to the "medical alerts" for all five prisoners following the beatings and "observed correctional officers bringing [Younger] down the stairs toward the medical unit." *Id.* ¶ 61-62. Younger alleges that "Dupree asked [ ] Ramsey what had happened" and accepted his explanation that Younger "fell . . . despite [his] injuries being markedly inconsistent with the asserted explanation," and that Dupree further "failed to seek emergency medical attention, . . . launch an investigation into the five prisoners' injuries, . . . [or] interview [Younger]." *Id.* ¶¶ 63-67. Younger contends that "[t]he assault and beating of

the five prisoners . . . as a form of discipline, was consistent with the culture of MRDCC under [ ] Crowder's leadership." *Id.* ¶ 69.

An Internal Investigation Division ("IID") report ultimately concluded that "on the morning of September 30, 2013 . . . Ramsey, Green, and Hanna . . . [did assault] the prisoners, including [Younger], who they believed were involved in the fight on the previous evening with the correctional officer." *Id.* ¶ 80. "Crowder is no longer the Warden of MRDCC following the assault on the five prisoners," and Ramsey, Green, and Hanna have been criminally indicted. *Id.* ¶¶ 82-83. "On May 6, 2015, [ ] Hanna plead guilty to conspiracy to commit first degree assault on the five prisoners, including [Younger]," and a jury found Green and Ramsey "guilty of second degree assault and misconduct in office for the assaults." *Id.* ¶¶ 85-86. Younger has now brought this civil action against the State of Maryland, Secretary Moyer, and Crowder (collectively the "State Defendants"); "supervisory correctional officers[s]" Dixon, Singletary, and Dupree; and "correctional officer[s]" Green, Hanna, and Ramsey, alleging violations of his rights under the United States Constitution and the Maryland Declaration of Rights as well as various Maryland tort law claims.

## STANDARD OF REVIEW

I.    Motion to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a

factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. As this Court has explained in *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 449 (D. Md. 2014), "[a]n assertion of governmental immunity is properly addressed under Rule 12(b)(1)." (citing *Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002)). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

II.    <u>Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The United States Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts

must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

ANALYSIS

I.    <u>The State Defendants' Motion to Dismiss (ECF No. 46)</u>

A.    <u>The State of Maryland</u>

Although Plaintiff Younger has brought claims against the State of Maryland for Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count Two); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Three); Negligent Hiring, Training, and Supervision (Count Eight); and Respondeat Superior (Count Ten), Younger now concedes that the State of Maryland is immune from suit as to all four counts. Pl. Response, p. 6, ECF No. 67.

As Judge Paul Grimm of this Court has confirmed this month in *McIntosh v. Div. of Corr.*, No. PWG-16-1320, 2017 WL 3412081, at *4 (D. Md. Aug. 7, 2017), "[t]he Eleventh Amendment [to the United States Constitution] bars suits for damages against a state in

federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)). "Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state court, *see* Md. Code Ann., State Gov't § 12-104, it has not waived its immunity under the Eleventh Amendment to suit in federal court." *Id.* "If sovereign immunity has not been waived, federal courts lack subject-matter jurisdiction over the claim[s]." *Robinson v. Pennsylvania Higher Educ. Assistance Agency*, No. GJH-15-0079, 2017 WL 1277429, at *2 (D. Md. Apr. 3, 2017). Accordingly, the State Defendants' Motion to Dismiss (ECF No. 46) is GRANTED as to Younger's claims against the State of Maryland in Counts Two, Three, Eight, and Ten of the Complaint. All claims against the State of Maryland shall be DISMISSED for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

B.    Secretary Stephen T. Moyer

Younger has brought two claims against the current Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") Stephen T. Moyer ("Secretary Moyer") for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count One) and Negligent Hiring, Training, and Supervision (Count Eight). Compl., ¶¶ 100-183, ECF No. 1. Although the Complaint states, *inter alia*, that "[Secretary] Moyer is sued in his official capacity as the Secretary of DPSCS, and stands in the shoes of his predecessors for the purposes of this action," *id.* ¶ 10, Younger has since clarified in his Response (ECF No. 67)

to the pending motions that he also intends to sue Secretary Moyer in his *individual* capacity. Secretary Moyer has now moved to dismiss all claims against him.

To the extent Younger has sued Secretary Moyer in his *official* capacity, his claims shall likewise be dismissed under the doctrine of sovereign immunity. "Although state officials are literally persons, 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.'" *McIntosh*, 2017 WL 3412081, at *4 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted)). Younger does not contest the dismissal of his claims against Secretary Moyer in his *official capacity*.

To the extent Younger has also sued Secretary Moyer in his *individual capacity*, those claims shall also be dismissed for failure to state a claim for relief, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Section 1983, *individual* liability must be based on *personal* conduct. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). While Younger has alleged that "[t]he prior bad acts by Defendants Ramsey, Green, Hanna, and Dixon were . . . known to [Secretary Moyer], DPSCS, and the State of Maryland by way of official Use of Force incident reports, but no corrective action was taken," Compl., ¶ 91, ECF No. 1, it is undisputed that Secretary Moyer did not yet hold the office of Secretary of the Maryland Department of Public Safety and Correctional Services at the time of the facts alleged in the Complaint. Rather, former Secretary Gary D. Maynard was the DPSCS

Secretary at that time.[9]  *See* Mem. Supp. State Def. Mot., p. 5, n. 1, ECF No. 46-1. As this Court observed in *Calhoun-El v. Bishop*, No. RDB-13-3868, 2016 WL 5453033, at *4 (D. Md. Sept. 29, 2016), "any duty to train and supervise the correctional officer defendants would have arisen within their official capacities only (i.e., in their position as secretaries of the Department of Public Safety and Correctional Services)."

Additionally, this Court has held that "[w]hile inadequacy of police training can serve as a basis for liability under § 1983, this is so only where the failure to train is so flagrant that it amounts to 'deliberate indifference' on the part of [defendant] with respect to "the rights of persons with whom the police come into contact." *Hall v. Fabrizio*, No. JKB-12-754, 2012 WL 2905293, at *2 (D. Md. July 13, 2012) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  Thus, "[e]ven at the pleadings stage, a plaintiff seeking to impose liability on a failure-to-train theory cannot rely on legal conclusions and speculations, but must allege at least some facts showing: (1) the nature of the training; (2) that any failure to train was a deliberate or conscious choice by [defendants]; and (3) that any alleged constitutional violations were actually caused by the failure to train." *Id.*  Although Younger baldly alleges that Secretary Moyer "ignored the lawless and ruthless environment maintained at MRDCC" and "knew or should have known that the Defendant Correctional Officers and Defendant

---

[9] This Court takes judicial notice of the fact that Gary D. Maynard served as the Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS") from March 1, 2007 to December 12, 2013.  *See* Maryland Manual On-Line, Department of Public Safety & Correctional Services, Former Secretaries, http://msa.maryland.gov/msa/mdmanual/22dpscs/former/html/msa14662.html.  Defendant Stephen T. Moyer, the current Secretary of the Maryland Department of Public Safety and Correctional Services, did not assume office until February 13, 2015, after serving as Acting Secretary from January 21, 2015 through February 13, 2015.  Maryland Manual On-Line, Department of Public Safety & Correctional Services, Secretary, http://msa.maryland.gov/msa/mdmanual/22dpscs/html/msa17099.html.  It is well-established that "[a] federal court may take judicial notice of . . . matters of public record in conjunction with a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment." *Helfand v. W.P.I.P., Inc.*, 165 F. Supp. 3d 392, 397 n. 6 (D. Md. 2016).

Supervisory Administrative Officials would cause [him] to be assaulted and beaten," he has failed to allege any "factual content" to support his "recitation of the elements," as required by the United States Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Younger's state law claim of Negligent Hiring, Training, and Supervision (Count Eight) against Secretary Moyer in his *individual* capacity fails for the same reasons discussed *supra*. This Court has recently confirmed in *Anderson v. Home Depot U.S.A., Inc.*, No. GJH-14-2615, 2017 WL 2189508, at *9 (D. Md. May 16, 2017) that " '[a]s in any action for negligence, a plaintiff asserting a cause of action for negligent hiring or retention must prove duty, breach, causation, and damages.' " (quoting *Asphalt & Concrete Servs., Inc. v. Perry*, 108 A.3d 558, 571 (Md. Ct. Spec. App. 2015), *aff'd*, 133 A.3d 1143 (Md. 2016), *reconsideration denied* (Apr. 21, 2016)). Younger has raised no specific allegations as to Secretary Moyer's supervision or training of prison officials, nor can Younger state a claim as to causation, as it is undisputed that Secretary Moyer did not yet hold the office of Secretary of the Maryland Department of Public Safety and Correctional Services at the time of the facts alleged in the Complaint. Furthermore, as noted *supra*, this Court has previously observed in *Calhoun-El*, 2016 WL 5453033, at *4 that "any duty to train and supervise the correctional officer defendants would have arisen within [Secretary Moyer's] *official* capacit[y] only," not his *individual* capacity. For all of these reasons, the State Defendants' Motion to Dismiss (ECF No. 46) is GRANTED as to Younger's claims against Secretary Moyer in Counts One and Eight of the Complaint. All claims against Secretary Moyer in his *official* capacity shall be DISMISSED for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and all claims against Secretary Moyer in his *individual* capacity shall

also be DISMISSED for failure to state a claim for relief, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    C.    <u>Former Warden Tyrone Crowder</u>

Younger has raised a total of eight counts against the final State Defendant, former Warden of the Maryland Reception, Diagnostic & Classification Center ("MRDCC") Tyrone Crowder ("Crowder"), for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count One); Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count Two); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Three); Battery (Count Five); Intentional Infliction of Emotional Distress (Count Six); Conspiracy (Count Seven); Negligent Hiring, Training, and Supervision (Count Eight); and Gross Negligence (Count Nine). Compl., ¶¶ 100-189, ECF No. 1. Younger has not named Crowder in his *official* capacity. On the contrary, he has specifically indicated in his Response (ECF No. 67) to the pending motions that he intends to sue former Warden Crowder in his *individual* capacity.[10] Crowder has now moved to dismiss all claims against him.

Crowder contends that he is shielded from liability as to all claims under the doctrine of "qualified immunity." "Qualified immunity may be invoked by a government official sued in his personal, or individual, capacity." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)). As the

---

[10] To the extent Younger has also brought these claims against Crowder in his *official* capacity, those claims are dismissed for the reasons discussed *supra* as to Secretary Moyer. This Court has recently held in *Young v. Bishop*, No. TDC-16-0242, 2017 WL 784664, at *3 (D. Md. Feb. 28, 2017) that the Eleventh Amendment immunizes a prison Warden employed by the Maryland Department of Public Safety and Correctional Services from suit as to all claims, with the exception of those seeking injunctive relief.

United States Court of Appeals for the Fourth Circuit has explained this month in *Humbert v. Mayor & City Council of Baltimore City*, No. 15-1768, 2017 WL 3366349, at *4 (4th Cir. Aug. 7, 2017), "[q]ualified immunity shields government officials from liability in a § 1983 suit as long as their conduct has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right . . . , and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.' " *Id.* (quoting *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007)). "The answer to both questions must be in the affirmative to defeat the officer's entitlement to immunity." *Id.* Although "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion," the Fourth Circuit has observed that "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.' " *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

Younger has undoubtedly alleged a violation of his rights. "There is no serious dispute that [Younger] was beaten by correctional officers Kwasi Ramsey, Jemiah Green, and Richard Hanna in retaliation" for the assault on a correctional officer. Mem. Supp. State Def. Mot., p. 3, ECF No. 46-1. Although Younger does not allege that Crowder *personally* assaulted him, he has stated a claim for "supervisory liability" under 42 U.S.C. § 1983. As this Court has confirmed this month in *Young-Bey v. B.A. Daddysboy, Cos*, et al., No. JFM-15-

3642, 2017 WL 3475667, at *6 (D. Md. Aug. 10, 2017), "[i]t is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims." (citing *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)). However, "[l]iability of supervisory officials 'is not based on ordinary principles of *respondeat superior*, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Id.* (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)). "Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Unlike Secretary Moyer, it is undisputed that Crowder was in fact the Warden of the MRDCC at the time of the facts alleged in the Complaint. Younger has not only alleged that Crowder had actual or constructive knowledge of his assault on September 30, 2013 and showed deliberate indifference to the actions of Officers Ramsey, Green, and Hanna, but has in fact alleged that he "effectively sanctioned a retaliatory attack" against Younger and four other inmates "who [he] believed were involved in the previous day's altercation." Compl., ¶ 32, ECF No. 1. He has alleged that Crowder "attended at least one of the roll calls" on the morning of September 30, 2013 and "displayed photographs depicting the

injuries to the correctional officer involved in the fight" the previous evening.  *Id.* ¶¶ 25-26.

Younger further alleges that "[d]uring that same roll call," Crowder "also circulated pictures

of the five prisoners who were removed from the general housing unit directly following the

fight," including Younger, and "identified [them] as being responsible for the fight."  *Id.* ¶¶

27-28.  He claims that Crowder "admonished the correctional officers for their handling of

the altercation on the prior day, calling them 'soft' and stating that they 'should [have] beat

the inmates' who were allegedly involved in the fight."  *Id.* ¶ 29.  Younger has alleged that

"Former Assistant Warden Suzanne Fisher advised [Crowder] that the same correctional

officers' names [including Officers Ramsey and Green] were appearing in periodic use of

force reports," but that Crowder "failed to ensure that [they] . . . were trained in proper

techniques for prisoner discipline."  *Id.* ¶¶ 71-72.  As for an "affirmative causal link between

[Crowder's] inaction and the . . . injury suffered," Younger has clearly alleged that he and

"each of the other four prisoners . . . whose photographs were displayed at roll call" by

Crowder "were assaulted and beaten in [a] brutal manner" by Officers Ramsey, Green, and

Hanna.  *Id.* ¶ 59.

Younger has likewise sufficiently alleged a violation of rights that were "clearly

established at the time of the alleged event," the second element necessary to defeat

Crowder's assertion of qualified immunity at this stage.  The United States Court of Appeals

for the Fourth Circuit has recently confirmed in *Bounds v. Parsons*, No. 16-1686, 2017 WL

2992085, at *3 (4th Cir. July 14, 2017) that "satisfy[ing] the 'clearly established' prong of the

qualified immunity inquiry [does not] require 'a case directly on point.' " (quoting *Smith v.

Ray*, 781 F.3d 95, 100 (4th Cir. 2015)).  "[T]he lodestar for whether a right was clearly

established is whether the law 'gave the officials 'fair warning' that their conduct was unconstitutional.' " *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)).  It is well-established that beating a prison inmate for purposes other than to restore or maintain prison security or for the prisoner's own safety violates that prisoner's rights under the Eighth and Fourteenth Amendments to the United States Constitution.  *See, e.g., Hudson v. McMillian*, 503 U.S. 1 (1992).  As this Court has recently confirmed in *Jones v. Chapman*, No. ELH-14-2627, 2017 WL 2472220, at *34 (D. Md. June 7, 2017), "although the burden is on the plaintiff to prove that a constitutional violation occurred, the *defendant must prove* that the right was not clearly established." (citing *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007)).  Defendants have cited no authority warranting dismissal of Younger's allegations on qualified immunity grounds at this stage, although this Court's "ruling on qualified immunity at the motion to dismiss stage does not necessarily preclude revisiting the issue at the summary judgment stage." *Garcia v. Montgomery Cty., Maryland*, 145 F. Supp. 3d 492, 508 n. 2 (D. Md. 2015) (*citing Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).  With respect to Younger's claims against Crowder under Articles 16, 24, and 25 of the Maryland Declaration of Rights (Counts Two & Three), Crowder's qualified immunity argument is equally unsuccessful as qualified immunity is not a defense to claims under the Maryland Constitution.  *See Jones*, 2017 WL 2472220, at *33 (citing *Littleton v. Swonger*, 502 F. App'x 271, 274 & n. 2 (4th Cir. 2012)).

Crowder additionally argues that he is entitled to statutory immunity under the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12–101 *et seq.*  *See* Mem. Supp. State Def. Mot., p. 19, ECF No. 46-1.  "Maryland officials are granted immunity

under the Maryland Tort Claims Act . . . for [tortious acts or omissions] committed within the scope of their duties when the violations are made 'without malice or gross negligence.' " *Housley v. Holquist*, 879 F. Supp. 2d 472, 482–83 (D. Md. 2011) (quoting *Lee v. Cline*, 863 A.2d 297, 304 (Md. 2004)). "[A]n officer's actions are grossly negligent 'when they are 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences.' " *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011)). For the reasons set forth above, Younger has clearly stated a claim of "malice or gross negligence," as he has alleged that Crowder specifically "sanctioned a retaliatory attack" against him and four other inmates by showing their photos to a series of correctional officers at a roll call and instructing that they should have been "beat[en]" for allegedly injuring prison guards.

Although Defendants have submitted a Declaration of Crowder (ECF No. 46-3), in which he denies Younger's allegations, this Court accepts as true the facts alleged in the Plaintiff's Complaint at the motion to dismiss stage. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). As noted *supra*, this Court will not convert the pending motions to motions for summary judgment. Additionally, the Fourth Circuit has made clear that "[w]hether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury." *Henry*, 652 F.3d at 536 (citing *Taylor v. Harford County Dep't of Soc. Servs.*, 862 A.2d 1026, 1034 (Md. 2004)). To the extent Crowder seeks to invoke Maryland common law "public official immunity," his motion likewise fails. The Court of Appeals of Maryland has made clear in *Lee v. Cline*, 863 A.2d 297, 305 (Md. 2004)

that "Maryland common law qualified immunity in tort suits, for public officials performing discretionary acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.' " For all of these reasons, the State Defendants' Motion to Dismiss (ECF No. 46) is DENIED as to Younger's claims against Crowder in Counts One, Two, Three, Five, Six, Seven, Eight, and Nine of the Complaint.

II.    Defendants Neil Dupree and Wallace Singletary's Motion to Dismiss (ECF No. 60)

Younger has brought eight counts against Defendants Neil Dupree ("Dupree") and Wallace Singetary ("Singletary"), both allegedly "supervisory correctional officers" at the MRDCC, for violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count One); Excessive Force, in violation of Article 24 of the Maryland Declaration of Rights (Count Two); Cruel and Unusual Punishment, in violation of Articles 16 and 25 of the Maryland Declaration of Rights (Count Three); Battery (Count Five); Intentional Infliction of Emotional Distress (Count Six); Conspiracy (Count Seven); Negligent Hiring, Training, and Supervision (Count Eight); and Gross Negligence (Count Nine). Compl., ¶¶ 100-189, ECF No. 1. As with Crowder, Younger has not named Dupree or Singletary in their *official* capacities. On the contrary, he has specifically indicated in his Response (ECF No. 67) to the pending motions that he intends to sue Dupree and Singletary in their *individual* capacities. Dupree and Singletary have now moved to dismiss all claims against them.

Like Crowder, Dupree and Singletary contend that they are shielded from liability as to all claims under the doctrine of qualified immunity. However, for the same reasons

discussed *supra* with respect to Crowder, Younger has alleged facts sufficient to overcome their assertion of qualified immunity at the motion to dismiss stage. As set forth above, "[q]ualified immunity shields government officials from liability in a § 1983 suit," but a plaintiff may defeat an officer's assertion of immunity by demonstrating that "the officer violated the plaintiff's constitutional right [and] . . . the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.' " *Humbert*, 2017 WL 3366349, at *4 (quoting *Miller*, 475 F.3d at 627). As noted *supra*, although "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion, . . . 'the defense faces a formidable hurdle' and 'is usually not successful.' " *Owens*, 767 F.3d at 396 (quoting *Field Day, LLC*, 463 F.3d at 191–92). This Court's ruling "does not necessarily preclude revisiting the issue at the summary judgment stage." *Garcia*, 145 F. Supp. 3d at 508 n. 2 (citing *Behrens*, 516 U.S. at 309).

As discussed *supra*, Younger has undoubtedly alleged a violation of his constitutional rights. "There is no serious dispute that [Younger] was beaten by correctional officers Kwasi Ramsey, Jemiah Green, and Richard Hanna in retaliation" for the assault on a correctional officer. Mem. Supp. State Def. Mot., p. 3, ECF No. 46-1. As with Crowder, Younger has not alleged that Dupree or Singetary *personally* assaulted him, but he has stated a claim for "supervisory liability" under 42 U.S.C. § 1983. As set forth *supra*, "[s]upervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Young-Bey*, 2017 WL 3475667, at *6 (citing *Shaw*, 13 F.3d at 799).

Although Dupree and Singletary contend that they have never held "administrative roles" at the Maryland Reception, Diagnostic & Classification Center, *see* Def. Mot., pp. 5-6, ECF No. 60-1, Younger has specifically alleged that they served as "supervisory correctional officers" at the time of the events alleged in the Complaint, Compl., ¶¶ 7-8, ECF No. 1. Younger has alleged that Dupree and Singletary "were responsible for the operation and implementation of the policies and regulations pertinent to the [Maryland Department of Public Safety and Correctional Services] . . . [including] the safety and well-being of prisoners. . . [and] the oversight and discipline of vigilante correctional officers." *Id.* ¶ 96.

Younger has not only alleged that Dupree and Singletary had actual or constructive knowledge of his assault on September 30, 2013 and showed deliberate indifference to the actions of Officers Ramsey, Green, and Hanna, but has in fact alleged that they "encouraged" MRDCC correctional officers "to use physical discipline" and "fostered and encouraged an environment of vigilante justice." *Id.* ¶¶ 70, 97. He has alleged that prior to the first roll call on September 30, 2013, "Singletary ordered [ ] Dupree to print out photographs of the injured correctional officers so that they could be shown to the incoming correctional officers before they began their daily shifts." *Id.* ¶ 24. Younger further alleges that Dupree, like Crowder, "also attended a roll call that day," "displayed pictures of the five prisoners who were removed from the general housing unit directly following the fight on September 29, 2013" and "effectively sanctioned a retaliatory attack against [them]." *Id.*

¶¶ 30-32. He claims that Dupree and Singletary were both aware of "previous use of force complaints" against Green, Ramsey, and Hanna prior to September 30, 2013. *Id.* ¶¶ 87-89. As for an "affirmative causal link between [Dupree and Singletary's] inaction and the . . . injury suffered," Younger has clearly alleged that he and "each of the other four prisoners . . . whose photographs were displayed at roll call" "were assaulted and beaten in [a] brutal manner" by Officers Ramsey, Green, and Hanna. *Id.* ¶ 59. Younger further claims that,"[a]s the only supervisory lieutenant," Dupree responded to the "medical alerts" for all five prisoners following the alleged beatings. *Id.* ¶ 61. He claims that "Dupree observed correctional officers bringing [Younger] down the stairs toward the medical unit, and asked [ ] Ramsey what had happened." *Id.* ¶ 62. When Ramsey informed Dupree that Younger "fell," Younger alleges that "Dupree accepted this explanation, despite [his] injuries being markedly inconsistent with the asserted explanation," and "failed to seek emergency medical attention, . . . launch an investigation into the five prisoners' injuries, . . . [or] interview [Younger]." *Id.* ¶¶ 63-67.

As explained *supra*, Younger has likewise sufficiently alleged that his violated rights were clearly established at the time of the alleged event, the second element necessary to defeat Dupree and Singletary's assertion of qualified immunity at this stage. It is well-established that beating a prison inmate for purposes other than to restore or maintain prison security or for the prisoner's own safety violates that prisoner's rights under the Eighth and Fourteenth Amendments to the United States Constitution. *See, e.g., Hudson v. McMillian*, 503 U.S. 1 (1992). Accordingly, Younger's Section 1983 claims against Dupree and Singletary shall not be dismissed on qualified immunity grounds. With respect to

Younger's claims against Dupree and Singletary under Articles 16, 24 and 25 of the Maryland Declaration of Rights (Counts Two & Three), his argument also fails as qualified immunity is not a defense to claims under the Maryland Constitution, as discussed *supra*. *See Jones*, 2017 WL 2472220, at *33 (citing *Littleton*, 502 F. App'x at 274 & n. 2).

Like Crowder, Dupree and Singletary additionally argues that they are entitled to statutory immunity under the Maryland Tort Claims Act ("MTCA"), Md. Code State Gov't, §§ 12–101 *et seq.* *See* Mem. Supp. Def. Mot., p. 20, ECF No. 60. As discussed above, "Maryland officials are granted immunity under the Maryland Tort Claims Act . . . for [tortious acts or omissions] committed within the scope of their duties when the violations are made 'without malice or gross negligence.' " *Housley*, 879 F. Supp. 2d at 482–83 (D. Md. 2011) (quoting *Lee*, 863 A.2d at 304). However, as with Crowder, Younger has clearly stated a claim of "malice or gross negligence" against Dupree and Singletary, as he has alleged that they specifically participated in "encourage[ing]" the attacks on September 30, 2013.

Although Defendants have submitted Declarations of Dupree and Singletary (ECF Nos. 60-3 & 60-4), in which they deny Younger's allegations, this Court accepts as true the facts alleged in a plaintiff's complaint at the motion to dismiss stage. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). As noted *supra*, this Court will not convert the pending motions to motions for summary judgment. Additionally, the Fourth Circuit has made clear that "[w]hether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury." *Henry*, 652 F.3d at 536 (citing *Taylor v. Harford County Dep't of Soc. Servs.*, 862 A.2d 1026, 1034 (Md. 2004)). To the extent Dupree and Singletary seek to invoke Maryland common law "public official immunity," their

motion likewise fails. The Court of Appeals of Maryland has made clear in *Lee v. Cline*, 863 A.2d 297, 305 (Md. 2004) that "Maryland common law qualified immunity in tort suits, for public officials performing discretionary acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.' " For all of these reasons, Dupree and Singletary's Motion to Dismiss (ECF No. 60) is also DENIED as to Younger's claims against them in Counts One, Two, Three, Five, Six, Seven, Eight, and Nine of the Complaint.

III.    Younger's Conspiracy Claim (Count Seven)

Defendants Crowder, Dupree, and Singletary have all moved to dismiss Younger's Conspiracy claim against them in Count Seven of the Complaint. *See* Mem. Supp. State Def. Mot., p. 24, ECF No. 46-1; Mem. Supp. Def. Mot., p. 24, ECF No. 60-1. They contend that Younger has failed to allege "a concerted effort or agreement between [them] to deny [him] a constitutional right" and that he has raised only "naked assertions." *Id.* "Under Maryland law, civil conspiracy is defined as the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.' " *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (quoting *Green v. Wash. Suburban Sanitary Comm'n*, 269 A.2d 815, 824 (Md. 1970))). "In addition to proving an agreement, 'the plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury.' " *Id.*

Younger has specifically alleged that the Defendants "*agreed* that the Defendant Correctional Officers would assault, batter, inflict emotional distress upon, and deprive [Younger] of his constitutional rights." Compl., ¶ 163, ECF No. 1 (emphasis added). He has alleged that on the morning of September 30, 2013, "Singletary ordered [Dupree] to print out photographs of the injured correctional officer so that they could be shown to the incoming correctional officers," that Crowder and Dupree "displayed" those photographs to the officers during roll call, and that all three Defendants "encouraged" the correctional officers "to use physical force." *Id.* ¶¶ 24, 26, 31, 70. For these reasons, Younger has alleged both elements of a conspiracy claim. Accordingly, the State Defendants' Motion to Dismiss (ECF No. 46) and Defendants Dupree and Singletary's Motion to Dismiss (ECF No. 60) are both DENIED as to Younger's Conspiracy claim (Count Seven).

## CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss (ECF No. 46) is GRANTED as to Younger's claims against the State of Maryland in Counts Two, Three, Eight, and Ten of the Complaint and Younger's claims against Secretary Moyer, in both his *individual* and *official* capacities, in Counts One and Eight of the Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The State Defendants' Motion to Dismiss (ECF No. 46) is DENIED as to Younger's claims against Crowder in Counts One, Two, Three, Five, Six, Seven, Eight, and Nine of the Complaint, and Dupree and Singletary's Motion to Dismiss (ECF No. 60) is also DENIED as to Younger's claims against them in Counts One, Two, Three, Five, Six, Seven, Eight, and Nine of the Complaint. Additionally, the State Defendants' Motion to Dismiss (ECF No. 46) and

Defendants Dupree and Singletary's Motion to Dismiss (ECF No. 60) are both DENIED as to Younger's Conspiracy claim (Count Seven). Accordingly, Defendants State of Maryland and Secretary Moyer, in both his *individual* and *official* capacities, are DISMISSED from this action. All other claims against the additional Defendants remain.

A separate Order follows.

Dated:      August 22, 2017

_____/s/_____
Richard D. Bennett
United States District Judge