IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN YOUNGER,                    \*

      Plaintiff,               \*

      v.                   \*          Civil Action No. RDB-16-3269

JEMIAH L. GREEN, *et al.*,        \*

      Defendants.          \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

In the morning hours of September 30, 2013, Sergeant Kwasi Ramsey ("Ramsey"), Sergeant Jemiah Green ("Green"), and Correctional Officer Richard Hanna ("Hanna") of the Maryland Department of Public Safety & Correctional Services ("DPSCS") entered Plaintiff Kevin Younger's ("Plaintiff" or "Younger") prison cell in the Maryland Reception, Diagnostic & Classification Center ("MRDCC"). After evacuating his cellmate, the officers threw Younger from his top bunk to the concrete floor, bludgeoned him with handcuffs and other tools, and slammed his head against a toilet bowl. Ramsey, Hanna, and Green have been convicted of their crimes;[1] the acting Warden of MRDCC, Tyrone Crowder ("Crowder") has been removed from his post;[2] and a jury assembled in the Circuit Court for Baltimore City has found the State of Maryland liable for Younger's injuries.[3]

---

[1] On May 6, 2015, Hanna pled guilty to conspiracy to commit first degree assault. (Am. Compl. ¶ 94); *State v. Hanna*, Case No. 114260031 (Balt. City Cir. Ct), filed Sept. 17, 2014. On April 1, 2016, a jury convicted Ramsey and Green on charges of second-degree assault and misconduct in office. (Am. Compl. ¶ 95); *State v. Ramsey*, Case No. 114260032 (Balt. City Cir. Ct.), filed Sept. 17, 2014; *State v. Green*, Case No. 114260029 (Balt. City Cir. Ct.), filed Sept. 17, 2014.

[2] (Am. Compl. ¶ 91.)

[3] *See Younger v. Maryland*, Case No. 24-C-17-004752 (Balt. City Cir. Ct.), filed Sept. 21, 2017.

In this action, Younger pursues claims against his assailants (Defendants Ramsey, Green, and Hanna) and against the Division of Correction officials whom he contends are responsible—Warden Crowder, Major Wallace Singletary ("Singletary"), and Lieutenant Neil Dupree ("Dupree"). In his Amended Complaint (ECF No. 140), he alleges violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, against Crowder, Dupree, and Singletary (Count One);[4] an identical claim asserted against Ramsey, Green, and Hanna (Count Two); Excessive Force, in violation of the Maryland Declaration of Rights, Article 24, against Ramsey, Green, and Hanna (Count Three);[5] violations of the Maryland Declaration of Rights, Article 24, against Crowder, Dupree, and Singletary (Count Four); Battery against Ramsey, Green, and Hanna (Count Five); Intentional Infliction of Emotional Distress against Ramsey, Green, and Hanna (Count Six); Conspiracy against Ramsey, Green, and Hanna (Count Seven); Negligent Retention, Training, and Supervision against Crowder, Dupree, and Singletary (Count Eight); Negligence against Crowder, Dupree, and Singletary (Count Nine).

Now pending before this Court are a Motion to Dismiss all Claims in the Amended Complaint Against Defendant Tyrone Crowder (ECF No. 154); a Motion to Dismiss all Claims in Amended Complaint Against Defendant Wallace Singletary (ECF No. 155); and

---

[4] Specifically, Younger alleges violations of his "right to be free from the use of excessive and unreasonable force and seizure," "the right to be free from a deprivation of life and liberty without due process of law," "the right to be free from known risks of serious physical harm," the right to be free from deliberate indifference for a serious medical need," and "the right to be free from objectively unreasonable conduct that causes, or has the potential to cause, constitutional harm." *See* Am. Compl., ¶ 113, ECF No. 140.

[5] Articles 16, 24, and 25 of the Maryland Declaration of Rights are interpreted *in pari materia* with their federal counterparts, the Eighth and Fourteenth Amendments to the United States Constitution. *See, e.g., Evans v. State*, 396 Md. 256, 327, 914 A.2d 25 (2006); *Pitsenberger v. Pitsenberger*, 287 Md. 20, 27, 410 A.2d 1052 (1980).

Defendant Dupree's Motion to Dismiss (ECF No. 156). The parties' Motions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, all three Motions (ECF Nos. 154, 155, and 156) are DENIED.

## BACKGROUND

In ruling on the pending motions to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.), Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). This Court may also consider documents attached to a motion to dismiss so long as they are "integral to the complaint and authentic." *Thompson v. United States*, RDB-15-2181, 2016 WL 2649931, at *2 n.4 (D. Md. May 10, 2016), *aff'd* 670 F. App'x 781 (4th Cir. 2016) (citation omitted).[6]

### I.  Younger's Assault by Ramsey, Green, and Hanna.

On September 29, 2013, Younger witnessed a fight between two inmates and a correctional officer. (*Id.* ¶ 22.) During the fight, the correctional officer was seriously injured. (*Id.*) Subsequently, the two inmates who participated in the confrontation were transferred from the general housing unit and placed in various cells in MRDCC. (*Id.* ¶ 24.) Younger and at least two other prisoners were also transferred from the general housing unit to other cells.

---

[6] This Court has previously addressed the facts of this case in a prior Memorandum Opinion. (ECF No. 72.) This Memorandum Opinion presents a new background in light of new allegations contained in the Amended Complaint. (ECF No. 140.)

(*Id.* ¶ 25.)  In particular, Younger was placed in the "5 Dormitory" with another individual. (*Id.* ¶ 26.)

On September 30, 2013 at approximately 6:30 a.m., Officer Hanna arrived at MRDCC, cleared the security checkpoint, and climbed the stairs toward the roll call room. (*Id.* ¶ 27.) Ramsey was waiting at the top of the stairs. (*Id.*)  When they met, Ramsey informed Hanna that "they had some business to handle" and that he "sought to exact revenge on the prisoners he and other supervisory staff believed to be involved" in the prior day's altercation.  (*Id.*) These prisoners and their cell locations were identified on a list in Ramsey's possession. (*Id.* ¶ 28.)  At some point, Green joined Hanna and Ramsey and the three officers proceeded to the armory. (*Id.*)  Inside, Ramsey obtained handcuffs and a large mace canister. (*Id.*)  Upon exiting, the armory control officer did not require Ramsey to sign the logbook as was required. (*Id.*) From the armory, Ramsey, Green, and Hanna proceeded to the elevator to the seventh-floor housing unit. (*Id.*)

The three officers then "systematically moved about MRDCC to each of the five prisoners' cells, brutally assaulting and beating each of the prisoners, including Mr. Younger." (*Id.* ¶ 29.)  Between 6:40 and 7:00 a.m., Ramsey, Green, and Hanna entered Younger's cell, "grabbing Mr. Younger by his shirt and legs, and throwing him from the top bunk onto the concrete floor." (*Id.* ¶¶ 30-33.)  "Ramsey, Green, and Hanna proceeded to attack Mr. Younger, striking him on the head, face, and body, with handcuffs, radios, and keys, and slamming his head against the toilet bowl in the cell," all the while verbally abusing him. (*Id.* ¶ 34.)  They also "kicked and stomped" on Younger as he lay helpless. (*Id.* ¶ 35.)  As a result of the beating,

"Mr. Younger's cell was covered in blood, and Mr. Younger was bleeding profusely from his head and face." (*Id.* ¶ 37.)

Younger did not receive medical treatment immediately following his assault. Ramsey, Green, and Hanna left him "in a pool of blood on the concrete floor of his cell, having difficulty breathing, without medical care or attention." (*Id.* ¶ 38.) After the three officers assaulted the prisoners on Ramsey's list, they returned to the second floor and stood outside of the roll call room. (*Id.* ¶ 43.) With this positioning, the officers ensured that they would be able to escort the prisoner victims to the medical unit. (*Id.*)

During roll call that morning, Lieutenant Neil Dupree and Major Wallace Singletary displayed photographs of the injured correctional officers and the inmates who they believed were involved in the altercation on the previous day. (*Id.* ¶¶ 49, 50.) Dupree and Singletary also circulated pictures of the five prisoners who were removed from the general housing unit following the September 29, 2013 fight—including Younger—and represented that these prisoners were responsible for the altercation. (*Id.* ¶¶ 51, 52.)

Between 8:00 and 8:30 a.m., medical alerts began to sound for each of the five prisoners attacked by Ramsey, Green, and Hanna. (*Id.* ¶ 55.) A tier officer eventually discovered Younger. (*Id.* ¶ 44.) In the company of other officers, Green pushed Younger in a wheelchair toward the medical unit. (*Id.* ¶¶ 45, 46.) When Dupree arrived in response to the medial alerts, he observed correctional officers bringing Younger down the stairs toward the medical unit and asked Ramsey what had happened. (*Id.* ¶ 57.) Ramsey claimed that Younger had "fell," and Dupree allegedly "accepted this explanation, despite Mr. Younger's injuries being

5

markedly inconsistent with the asserted explanation, even to a medically untrained eye." (*Id.* ¶ 58.)  Dupree allegedly failed to seek emergency attention, launch an investigation into Younger's injuries, or interview Younger and his cellmate. (*Id.* ¶¶ 60, 61, 62.)  In the medical unit, Green brought Younger an Incident Report form and a pen. (*Id.* ¶ 46.)  Green then ordered Younger "to note that he sustained his injuries by falling from his bunk bed." (*Id.*)  After receiving some medical care that morning, Younger was returned to his cell by Green and Ramsey. (*Id.*)

During the afternoon roll call that day, Warden Crowder chastised the correctional officers involved in the altercation of September 29, 2013.  (*Id.* ¶ 53.)  He criticized the officers for being "soft" and told them that they "should had [sic] beat the inmates" who were allegedly involved in the fight.  (*Id.*)  That evening, Crowder entered Younger's cell, where he was cowering in fear underneath of his bunkbed. (*Id.* ¶ 66.)  Younger told Crowder that he had been beaten and that he had helped the correctional officer who had been injured on September 29.  (*Id.* ¶ 68.)  During their discussion, Crowder indicated that prison leadership was aware that he had assisted the officer and assured Younger that he would be moved to another cell block.  (*Id.*)  Younger was relocated that evening. (*Id.*)  On October 1, 2013, Younger sought and obtained medical assistance by advising the chief of security about his attack.  (*Id.* ¶ 70.)

Although prison leadership was aware that Younger had assisted the injured officer on September 29, 2013, Younger nevertheless faced administrative charges.  (*Id.* ¶ 71.)  During his disciplinary hearing, he was not permitted to call witnesses or present evidence.  (*Id.* ¶ 72.)

Younger was physically incapable of presenting a defense during the hearing because he was still recovering from his injuries. (*Id.*) As punishment for the charges, Plaintiff was sentenced to 120 days (four months) in solitary confinement, during which time he could not access full medical services. (*Id.* ¶¶ 72, 76.) On October 24, 2013, Plaintiff was criminally charged with second degree assault for his alleged involvement in the same September 29, 2013 incident. (*Id.* ¶ 73.) The State later dismissed these charges. (*Id.* ¶ 93.)

## II. Widespread, Documented Inmate Abuse at the Maryland Reception, Diagnostic & Classification Center.

Younger alleges that his assault took place in the context of civil rights abuses and "vigilante justice" fostered by Defendants Crowder, Singletary, and Dupree at MRDCC. (Am. Compl. ¶¶ 13, 14, 21, ECF No. 140.) This culture manifested in frequent inmate abuses and disregard for prison protocol. Officers allegedly utilized a special call code on their MRDCC radios to signal a "select group of first responders who would dole out extrajudicial punishment on prisoners with whom they had an issue." (*Id.* ¶ 14.) The officers allegedly did not fear punishment for their actions, instead "believ[ing] that they could improperly assault prisoners and then cover up those incidents with impunity." (*Id.* ¶ 21.) The staff at MRDCC also disregarded annual in-service trainings, which some supervisory personnel considered "a joke" and "a waste of . . . time." (*Id.* ¶ 20.)

Younger alleges that Crowder, Dupree, and Singletary were aware that Ramsey, Green, and Hanna had been suspected of use-of-force abuses long before Younger's assault. Younger claims that Crowder, Dupree, and Singletary knew that Green and Ramsey had been the subject of "active criminal assault investigations, and numerous excessive use of force

investigations, some of which were sustained." (*Id.* ¶¶ 96, 97.)  He further alleges that Crowder, Dupree, and Singletary were aware that Hanna had "been involved in previous use of force complaints and investigations." (*Id.* ¶ 98.)

Crowder, in particular, allegedly ignored repeated warnings about Green and Ramsey from MRDCC staff.  In September 2012, the assistant warden at MRDCC notified Crowder "that she was concerned about seeing the same officers' names, including Green and Ramsey, appearing in use of force reports." (*Id.* ¶ 17.)  When Crowder attempted to rationalize Green and Ramsey's behavior as the work of "first responders to fluid situations," the assistant warden pressed: she noted that the officers were "previously suspended for this conduct and suspensions indicate a real problem." (*Id.*)  In May 2013, the investigative captain approached Crowder and recommended additional use of force training, noting that Ramsey and Green had repeatedly appeared in use of force incident reports.  (*Id.* ¶ 18.)  When Crowder refused to respond, the investigative captain conducted impromptu use of force training for these officers. (*Id.*)  In July 2013, the investigative captain told Crowder that Green should receive a disciplinary sanction for his involvement in another use of force complaint, complaining "that other involved officers lied to cover for Green and that foreclosed any ability to discipline Green." (*Id.* ¶ 19.)

The nature of Dupree's job ensured that he was exposed to information about Ramsey, Green, and Hanna's misconduct.  Dupree was required to prepare a "Scrutinized/Compromised Staff Report" for DPSCS headquarters.  (*Id.* ¶ 100.)  The report listed all correctional staff at MRDCC who were under investigation or were suspected of

violating prison policies and protocols. (*Id.*) While preparing the report, Dupree would "synthesize information" concerning staff misconduct and review a draft with the warden before finalizing it. (*Id.*) Younger alleges that the names of Ramsey, Green, and Hanna were contained in the Report. (*Id.*)

Dupree also personally assisted Ramsey, Green, and Hanna with their retributory assaults. (*Id.* ¶ 101.) Dupree frequently forwarded staff complaints about prisoners to the trio, who would respond with violence. (*Id.*) Dupree was allegedly aware that Ramsey, Green, and Hanna would abuse inmates after he forwarded them information of this kind and that the medical staff were complicit in their activities, but did nothing to stop them. (*Id.*)

Finally, Younger alleges that Singletary had knowledge of Ramsey, Green, and Hanna's misconduct but did not attempt to prevent it. (*Id.* ¶ 103.) For example, Singletary was allegedly present when Ramsey, Green, and Hanna beat a prisoner who was shackled in a three-point restraint. (*Id.*) Singletary also allegedly knew that Ramsey, Green, and Hanna would leave prisoners in the showers for hours at a time. (*Id.*) Although Singletary was their most senior supervisory, he allegedly failed to report these incidents. (*Id.*)

## III.    Criminal and Civil Proceedings.

Following Younger's assault, prison staff were subject to administrative and criminal investigations. On October 1, 2013, the Intelligence and Investigative Division of the Maryland Department of Public Safety and Correctional Services ("DPSCS") launched an investigation following the assault of Younger and other prisoners. (*Id.* ¶ 87.) The investigation concluded that on the morning of September 30, 2013, Ramsey, Green, and

Hanna assaulted five prisoners, including Younger, whom they believed were involved in the fight on the previous evening. (*Id.* ¶ 88.)  The investigation also concluded that Crowder failed to take appropriate steps following the September 29, 2013 assault and "did not ensure the safety of the five inmates and . . . failed to instruct staff to check the welfare of the five named inmates in the assault." (*Id.* ¶ 90.)  On October 7, 2013, the State demoted Crowder and placed him on administrative leave.  (*Id.* ¶ 91.)

On September 17, 2014, Ramsey, Green, and Hanna were criminally indicted for their assault of the five prisoners.[7] (*Id.* ¶ 92.)  Prior to the indictments, Younger provided testimony to secure Green, Ramsey, and Hanna's convictions. (*Id.* ¶ 93.)  On May 6, 2015 Hanna pled guilty to conspiracy to commit first degree assault. (*Id.* ¶ 94.)  On April 1, 2016, a jury found Green and Ramsey guilty of second degree assault and misconduct in office. (*Id.* ¶ 95.)

On September 28, 2016, Younger filed suit in this Court against the State of Maryland, Stephen T. Moyer, the then-acting Secretary of the Maryland Department Public Safety & Correctional Services, Stephen T. Moyer, the former MRDCC Warden Tyrone Cowder; Pamela Dixon, Wallace Singletary, Neil Dupree, Jemiah Green, Richard Hanna, Kwasi and Ramsey. (ECF No. 1.)   In a Memorandum Opinion issued on August 22, 2017, this Court dismissed all claims asserted against the State of Maryland and Stephen T. Moyer in his official capacity on sovereign immunity grounds.  (Mem. Op. 9-10, ECF No. 72.)  This Court also

---

[7] *See State v. Hanna*, Case No. 114260031 (Balt. City Cir. Ct), filed Sept. 17, 2014; *State v. Ramsey*, Case No. 114260032 (Balt. City Cir. Ct.), filed Sept. 17, 2014; *State v. Green*, Case No. 114260029 (Balt. City Cir. Ct.), filed Sept. 17, 2014.

dismissed Younger's *individual* capacity claims against Moyer failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*Id.* at 10-13.)

Subsequently, in September 2017, Younger filed suit against the State of Maryland in the Circuit Court for Baltimore City, Case No. 24-C-17-004752. (Case Information, ECF No. 154-4.) While the State case proceeded, this Court stayed the Scheduling Order to facilitate settlement negotiations. (ECF No. 96.) In May 2019, Younger was granted leave to file an Amended Complaint in the State action. (*Id.* at 14.) In his Amended Complaint, Younger asserted three claims against the State of Maryland: Excessive Force in Violation of the Maryland Declaration of Rights, Article 24 (Count I), Cruel and Unusual Punishment in Violation of the Maryland Declaration of Rights, Article 16 and 25 (Count II), and Negligent Hiring, Training, and Supervision (Count III). (Am. Compl. ¶¶ 98-141, ECF No. 154-3.) The case was submitted to a jury, which found in favor of Younger and awarded him $2,700,000.00. (Verdict Sheet, ECF No. 154-5.) Specifically, the jury answered the following two questions affirmatively:

1. Do you find by a preponderance of the evidence that the Defendant, State of Maryland, violated the Plaintiff, Kevin Younger's rights under the Maryland Declaration of Rights, and that this violation was a proximate cause of Kevin Younger's injuries?

2. Do you find by a preponderance of the evidence that the Defendant, State of Maryland, negligently supervised, trained, or retained its correctional staff at MRDCC, and that this negligence was a proximate cause of the Plaintiff, Kevin Younger's injuries?

(*Id.*) On Motion by the State, the Circuit Court reduced the judgment to $200,000.00, the maximum amount recoverable under the Maryland Tort Claims Act. (ECF No. 154-4 at 19-20.) The State appealed the Judgment on August 2, 2019. (*Id.* at 20.)

On June 18, 2019, this Court lifted the Stay in this matter. (ECF No. 128.) On July 30, 2019, Younger filed an Amended Complaint. (ECF No. 140.) In response, the presently-pending motions to dismiss were filed: a Motion to Dismiss all Claims in the Amended Complaint Against Defendant Tyrone Crowder (ECF No. 154); a Motion to Dismiss all Claims in Amended Complaint Against Defendant Wallace Singletary (ECF No. 155); and Defendant Dupree's Motion to Dismiss (ECF No. 156).

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The United States Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### I. The doctrine of *res judicata* does not bar Younger's claims.

All Defendants argue that the doctrine of *res judicata* bars the claims asserted against them.[8] To determine the preclusive effect of Younger's favorable state court judgment, this Court applies Maryland law. *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (holding that the "preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered"). In Maryland, *res judicata* "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter, and the causes of action are identical or substantially identical as to issues actually litigated and as to those which *could have or should have been raised in the previous litigation.*" *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999 (2012) (quoting *R&D 2001, LLC v. Rice*, 402 Md. 648, 663, 938 A.2d 839 (2008) (emphasis added)). The

---

[8] Although *res judicata* is an affirmative defense, it may be asserted upon a Rule 12(b)(6) motion when the defense "clearly appears on the face of the complaint." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (quoting *Richmond v. Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

doctrine "avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 106, 887 A.2d 1029 (2005) (citation omitted). Maryland courts often describe the doctrine as consisting of the following three elements: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *Bank of New York Mellon v. Georg*, 456 Md. 616, 678, 175 A.3d 720 (2017) (quoting *Powell v. Breslin*, 430 Md. 52, 64-64, 59 A.3d 531 (2013)).

The parties agree that there has been a final judgment on the merits. (Pl.'s Resp. 22, ECF No. 166.) Plaintiff argues that *res judicata* does not apply in this action because the Defendants are not in privity with the State of Maryland—the Defendant in the State case. There is no dispute that this case involves different defendants than those sued in State court. In the State action, Younger sued only the State of Maryland. In this action, Younger sues the State of Maryland's employees who were allegedly responsible for his injuries. This Court need only consider whether the employee-defendants sued in this action are in privity with the State for purposes of Maryland's doctrine of *res judicata*. They are not. Under Maryland law, plaintiffs may maintain the same cause of action against employees and employers in separate suits, so long as the separate suits require the adjudication of separate defenses. In such circumstances, the Maryland courts do not consider the employer and employee in privity for purposes of *res judicata*. In this case, the State of Maryland presented an immunity defense in

federal court which required Younger to bring claims against it in State court, while maintaining a separate action in federal court against the State employees. Under these circumstances, the doctrine does not apply.

In the *res judicata* context, privity "generally involves a person so identified in interest with another that he represents the same legal right." *FWB Bank v. Richman*, 354 Md. 472, 498 (1999). In determining whether parties are the same or are in privity with one another for purposes of *res judicata*, Maryland courts look to *The Restatement (Second) of Judgments* § 51 (1982). *See Prince George's Cty. v. Brent*, 414 Md. 334, 343, 995 A.2d 672 (2010) (quoting *The Restatement (Second) of Judgments* § 51 (1982)). Section 51 reads, in relevant part, as follows:

> Persons Having a Relationship in Which One is Vicariously Responsible for the Conduct of the Other
>
> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.
>
> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:
>
> > (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or
>
> > (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.
>
> (2) A judgment in favor of the injured person is conclusive upon him as to the amount of his damages, unless:
>
> > . . .
>
> > (b) Different rules govern the measure of damages in the two actions.

*The Restatement (Second) of Judgments* § 51.

In general, Maryland law "recognizes that a principal and his agent are in privity." *Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir. 1984) (citing *McKinzie v. Baltimore & Ohio R.R.*, 28 Md. 161 (1868)); *see also Savary v. Cody Towing & Recovery, Inc.*, DKC-10-2159, 2011 WL 337345, at *3-4 (D. Md. Jan. 31, 2011) (holding that financing company and its authorized agent, a towing company charged with repossessing an all-terrain vehicle from a customer, were in privity for purposes of *res judicata*). Employers and employees are also in privity for purposes of this doctrine, so long as they cannot invoke separate defenses. *See deLeon v. Slear*, 328 Md. 569, 586-88, 616 A.2d 380 (1992) (finding that employer and employees were in privity in separately-maintained defamation suits because the defense of conditional privilege, asserted in the prior action, "would seem to be fully applicable" to defendants in the subsequent suit).

In *Prince George's Cty. v. Brent*, 414 Md. 334 (2010), the Maryland Court of Appeals determined that a prior judgment against a government entity does not preclude the same plaintiff from asserting the same claim against the entity's employee, so long as the separate suits present separate defenses unique to the defendants. 414 Md. at 342-49. *Brent* arose from an automobile accident between Officer Michael W. Daily of the Prince George's County Police Department and the Plaintiff, Cleveland Brent. *Id* at 336. In the first action (*Brent I*), Brent filed a negligence claim against Prince George's County and obtained a jury verdict in the amount of $320,000.00. *Id.* The judgment was subsequently reduced to $20,000.00 pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-524, which creates a limited waiver of sovereign immunity and governmental immunity "to the extent of benefits provided by the security accepted by the Motor Vehicle Administration." *Id.* The $20,000.00 figure

corresponded to the "security accepted by the Motor Vehicle Administration" per person per accident under Md. Code Ann. Transp. § 17-103(b)(1). *Id.*

In the second action (*Brent II*), Brent attempted to circumvent the effects of the County's governmental immunity and the reduction of judgment effectuated by § 5-524 by filing suit directly against Officer Daily. *Id.* at 338. In *Brent II*, Officer Daily asserted an immunity defense based on Md. Code Ann., Cts. & Jud. Proc. § 5-639(b)(1), which provides immunity to "operator[s] of an emergency vehicle . . . while operating the emergency vehicle in the performance of an emergency service." *Brent*, 414 Md. at 338. The case was submitted to a jury, which was charged with resolving the sole issue of whether Officer Daily was operating his vehicle "in the performance of an emergency service." *Id.* at 338-39. The jury answered that question in the negative. *Id.* Per the parties' agreement, judgment was entered in favor of *Brent* for $200,000.00, against which the $20,000.00 paid by the County was credited. *Id.* at 339-40. Asserting *res judicata*, the County appealed the judgment to the Maryland Court of Special Appeals, and subsequently, to the Maryland Court of Appeals. *Id.* at 340.

The Court of Appeals determined that *res judicata* did not apply, holding that master and servant are not "privies" for the purpose of the *res judicata* doctrine. *Id.* at 342, 349. More broadly, *Brent* held that a tort plaintiff may sue only the employer or employee, obtain a judgment, and then sue the remaining defendant. *Brent*, 414 Md. at 345. The Court reasoned that a tort plaintiff "is not required to join both [the employer and employee] and may decide to bring suit in the first instance against only of them" and that "one of the obligors may be

immune to suit while the other is not." *Id.* at 343 (quoting *Restatement (Second) of Judgments* § 51 cmt. a (1982)). For these reasons, a lawsuit maintained against an employer may present separate claims, ill-suited for the application of *res judicata*. *Id.* at 343. So long as the claim has not been satisfied, the plaintiff is permitted to pursue it.

Applying Maryland law and *The Restatement (Second) of Judgments* § 51, this Court has likewise held that a defendant-employer and defendant-employee are not in privity for purposes of *res judicata* when the two are able to assert separate defenses. *See Church v. Maryland*, 180 F. Supp. 2d 708, 752 (D. Md. 2002). In *Church*, an employee, Rita M. Church, filed suit against a coworker for sexual harassment in State court. 180 F. Supp. 2d at 746-47. The State court dismissed the claim with prejudice, holding that a Title VII action cannot lie against an individual. *Id.* Subsequently, the plaintiff filed suit against her employer in federal court. The employer asserted a *res judicata* defense, arguing that Church's employer and her co-worker were in privity for purposes of the doctrine. *Id.* at 746-47. This Court rejected that contention, finding that "both exceptions" presented in *The Restatement (Second) of Judgments* § 51 applied because the plaintiff could only pursue her Title VII claim against her employer and that her coworker had a unique defense in the prior action—the inapplicability of Title VII—which the employer could not assert in the second suit. *Id.* at 752.

The Defendants in this case—Ramsey, Green, Hanna, Crowder, Dupree, and Singletary—are not in privity with the State of Maryland for purposes of *res judicata* because the judgment obtained against the State of Maryland in the State court action was "based on based on a defense that was personal to the defendant in the first action." *The Restatement*

*(Second) of Judgments* § 51 (1982). *Brent* and *Church* mandate this conclusion. As in *Brent*, Younger

has obtained a favorable judgment and damages award against a government entity which was

subsequently reduced as a result of a limited waiver of immunity. Just as Brent was permitted

to sue the employee responsible for his injuries, Younger may now resume his suit against the

government's employees in their individual capacities. As in *Brent*, the individual Defendants

will assert defenses unavailable in the State action, including the defense of qualified immunity.

The availability of unique defenses to these defendants indicates that the State of Maryland

and its employees' interest are not so aligned as to render them "the same" or "in privity" for

purposes of *res judicata*. Additionally, this action presents new issues unresolved in State court

and the prospect of an independent damages award. Accordingly, Younger may pursue this

action. *Brent* explicitly condones this outcome—it broadly permits tort plaintiffs to sue an

employer, then pursue an employee so long as the asserted claims remain unsatisfied. That is

the situation here (*see* ECF No. 166 at 27), and so Younger's case will proceed.

This case also resembles the situation in *Church*, in which an employee was permitted

to file a suit against her employer after her sexual harassment claims against her coworker were

dismissed. In this case, Younger's claims against his employer were dismissed by this Court,

prompting him to sue in State court, where his jury award was dramatically reduced based on

the State's sovereign immunity defense. Just as Church was afforded an opportunity to pursue

her claims against her employer despite an unfavorable adjudication in the prior action, so too

must Younger be permitted to sue the employees allegedly responsible for causing him harm

despite the dramatic reduction in the jury's damage award in the State action.

## II. The Maryland Tort Claims Act does not bar Younger's state-law claims.

Defendants argue, as they did previously in this case, that they are immune to Younger's state claims because Younger has failed to allege that they acted with malice or gross negligence as is required by the Maryland Tort Claims Act. Alternatively, Defendants argue that Younger is estopped from alleging that the defendants have acted with malice or gross negligence because Younger's action against the State of Maryland required him to demonstrate that the Defendants acted without malice or gross negligence. Neither of these contentions are availing. Younger's Amended Complaint sufficiently alleges that Crowder, Dupree, and Singletary each condoned or intentionally failed to prevent widespread abuses against inmates, including the harm meted out against Younger.

The MTCA offers "a limited waiver of sovereign immunity" and "is the sole means by which the State of Maryland may be sued in tort." *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (citation omitted). The State's immunity is not waived for the tortious acts or omissions of state personnel that fall outside of the scope of their public duties or are committed with malice or gross negligence. Cts & Jud. Proc. § 5-522(b). Likewise, "Maryland officials are granted immunity under the Maryland Tort Claims Act . . . for [tortious acts or omissions] committed within the scope of their duties when the violations are made 'without malice or gross negligence.'" *Housley v. Holquist*, 879 F. Supp. 2d 472, 482–83 (D. Md. 2011) (quoting *Lee v. Cline*, 863 A.2d 297, 304 (Md. 2004)). In this context, "malice" means "actual malice" or "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee v. Cline*, 384 Md. 245, 268, 863 A.2d 297, 311

(2004). "[A]n officer's actions are grossly negligent 'when they are 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences.'" *Housley v. Holquist*, 879 F. Supp. 2d 472, 482-83 (D. Md. 2011) (quoting *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011)). The Fourth Circuit has made clear that "[w]hether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury." *Henry*, 652 F.3d at 536 (citing *Taylor v. Harford County Dep't of Soc. Servs.*, 862 A.2d 1026, 1034 (Md. 2004)).

Defendants' argument that Younger has failed to allege malice or gross negligence is meritless. This Court previously rejected these arguments. (Mem. Op. 17-19, 23-24, ECF No. 72.) The Amended Complaint's slight adjustments to Younger's factual allegations have little effect on this Court's analysis. Younger has at the very least alleged that the Defendants acted with gross negligence by intentionally failing to perform their most basic duties with reckless disregard for the consequences to Younger's safety. The Complaint both generally alleges that Crowder, Dupree, and Singletary sanctioned and encouraged an environment which perpetuated widespread inmate abuse and cites specific incidents in which the three abandoned their responsibilities to the detriment of MRDCC inmates. For example, Crowder is alleged to have ignored explicit, repeated complaints about Ramsey and Green, and to have expressly encouraged officers to abuse inmates. (Am. Compl. ¶¶ 17-19, 53.) Dupree is alleged to have prepared reports which made him aware of Ramsey, Green, and Hanna's conduct but nevertheless continued to forward complaints about inmates to these three individuals,

thereby ensuring further abuse. (*Id.* ¶¶ 100, 101.) Singletary is alleged to have witnessed Ramsey, Green, and Hanna abuse inmates—including the assault of an inmate confined by a three-point restraint—and failed to take any action to stop these abuses. (*Id.* ¶ 103.) Although the factual allegations with respect to Crowder have changed—he is no longer alleged to have shown photographs of Younger and other inmates during roll call—these minor alterations have little bearing on the analysis. The totality of the Amended Complaint clearly alleges that Crowder, Dupree, and Singletary behaved in an unlawful and wanton manner and are not shielded by the MTCA.[9]

Contrary to the Defendants' assertions, judicial estoppel does not foreclose Younger from alleging that Crowder, Dupree, and Singletary acted with gross negligence. The doctrine of judicial estoppel prevents a party from adopting a position inconsistent with a position taken in prior litigation. *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). The purpose of judicial estoppel is to prevent litigants from "playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) (*John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995)). For judicial estoppel to bar Younger's claims, Defendants must establish that (1) Younger's positions are inconsistent, (2) Younger's prior inconsistent position must have been accepted by the tribunal in the prior proceedings, and (3) Younger must have acted in bad faith, intentionally misleading either court to gain an unfair advantage. *Zinkand*, 478 F.3d at 638.

---

[9] Curiously, Younger has withdrawn his gross negligence cause of action and now brings only a garden-variety negligence claim (Count Nine) against Crowder, Dupree, and Singletary. Despite this change, dismissal is not warranted because Younger has sufficiently alleged that the Defendants acted with gross negligence.

Defendants maintain that, in order to prevail in the State action, Younger had to show that the "actionable conduct" was committed within the scope of the State officials' public duties and without malice or gross negligence.  *See* Md. Code Ann., State Gov't § 12-104(b). Defendants argue that this case and the State action are based on the same "actionable conduct" and, accordingly, Younger cannot now sue the individual defendants for acting with gross negligence.  The record reflects, however, that the State court had a different conception of the prior action.  As the Honorable Julie R. Rubin remarked:

> Here the theory doesn't rest on persuading the jury or me first that, for example, Sergeant Ramsey or Officer Hannah [sic] acted within or acted negligently.  I think it somewhat kind of turns it on its head and says, yeah, these folks acted deliberately, intentionally to hurt this man. . . .  And that was within the scope of their duties because the State's purpose in how it managed that facility was with an eye toward intentionally injuring individuals in Mr. Younger's position.
>
> And so it's sort of an – puts me in a curious position because the theory of the case isn't that the jury should hold the State liable because these guys acted negligently.  The theory is that the State is a participant.

(Trial Tr. (June 10, 2019) 127:9-23, ECF No. 161-4.)

From these remarks, it is apparent that the "actionable conduct" in the State case differs significantly from the "actionable conduct" presented in this case.  Specifically, it appears from Judge Rubin's remarks that the that the actions of the State itself—as distinguished from the allegations complained of in this case—were at issue in State court.  Accordingly, Younger may allege that the Defendants acted with gross negligence in this action despite prevailing against the State in the prior action.

## III.     Younger has stated a claim under 42 U.S.C. § 1983.

Defendants argue that Plaintiff has failed to state a claim under 42 U.S.C. § 1983.  This Court has previously rejected this argument on the force of the allegations presented in the Original Complaint.  (Mem. Op. 14-16, 20-22, ECF No. 72.)   Although those factual allegations have changed slightly, this Court discerns no basis for departing from its prior holding.

As explained in this Court's prior Memorandum Opinion, Younger has undoubtedly alleged a violation of his rights. "There is no serious dispute that [Younger] was beaten by correctional officers Kwasi Ramsey, Jemiah Green, and Richard Hanna in retaliation" for the assault on a correctional officer.  (State Def. Mot. 3, ECF No. 46-1.)  Although Younger does not allege that the Defendants *personally* assaulted him, he has stated a claim for "supervisory liability" under 42 U.S.C. § 1983.  As this Court has previously explained, *Young-Bey v. B.A. Daddysboy, Cos*, et al., No. JFM-15-3642, 2017 WL 3475667, at *6 (D. Md. Aug. 10, 2017), "[i]t is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims." (citing *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)).   However, "[l]iability of supervisory officials 'is not based on ordinary principles of *respondeat superior*, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Id.* (quoting *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001)). "Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed

a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).[10]

In this case, Younger has sufficiently alleged that all Defendants had actual or constructive knowledge of Ramsey, Green, and Hanna's unconstitutional behavior. The Amended Complaint describes a lawless environment permeated by "vigilante justice." (Am. Compl. ¶¶ 13-14.) It is in this context that Crowder ignored his supporting officer's complaints about Ramsey, Green, and Hanna's behavior. (*Id.* ¶ 111.) On the same day of Younger's beating, Crowder is alleged to have chastised the MRDCC officers as "soft" and encouraged them to beat inmates. (*Id.* ¶ 53.) After Younger's assault, he allegedly entered his cell and expressed his understanding that Younger had not attempted to harm the injured officer on the previous day—and yet Younger was still subject to disciplinary action. (*Id.* ¶¶ 68, 71, 73.) These allegations sufficiently demonstrate that Crowder not only demonstrated an "inadequate response" to his inferior officer's behavior, but expressly sanctioned it and encouraged it.

The allegations against Dupree and Singletary are of a similar variety. Singletary was the shift commander for Ramsey, Green, and Hanna. (*Id.* ¶ 102.) He was present in 2013

---

[10] The parties debate whether Younger should be considered a "pretrial detainee" or a "prisoner" for purposes of this analysis. As discussed *infra*, the record is somewhat ambiguous on this issue. The Court need not resolve the issue for purposes of its § 1983 analysis, because Younger has satisfied the more rigorous standards applicable to prisoners.

when the three officers beat an inmate who was shackled in a three-point restraint, and never reported this incident.  (*Id.* ¶ 103.)  Dupree was tasked with compiling a report which "listed correctional staff at MRDCC who were either under investigation, or were suspected of violating prison policies and protocols" and that Ramsey, Green, and Hanna were among those staff suspected of wrongdoing. (*Id.* ¶ 100.)  Nevertheless, Dupree funneled staff complaints about inmates to the trio, knowing that they would carry out retributory violence. (*Id.* ¶ 101.)  Though Singletary and Dupree may not have contemplated an assault against Younger in particular, the law does not impose this requirement—only that the defendant in question is alleged to have been aware of a risk of constitutional injury to citizens "*like* the plaintiff." *Shaw*, 13 F.3d at 799.  For all of these reasons, Younger has sufficiently pled a § 1983 cause of action against the Defendants.

## IV.  Younger has stated a claim under Article 24 of the Maryland Declaration of Rights.

Finally, Defendants argue that Younger's excessive force claims are "rooted in the Eighth Amendment and, by implication, its State analogs, Articles 16 and 25" because Plaintiff alleges that he is a prisoner, not a pretrial detainee. (Crowder Mot. 33-34, ECF No. 154-1.) Accordingly, Defendants argue, his claim under the due process provisions of Article 24 must be dismissed.

This Court rejects the argument.  Although the Amended Complaint repeatedly describes Youngers as "prisoner," there is no dispute that Younger was a pretrial detainee at the time of the events in question. All parties to the State Court proceedings acknowledged

this. (*See* State's Motion *in Limine*, State Case, Paper No. 60/0, ECF No. 166-1); (Joint Statement of Facts, State Case, Paper No. 72/0, ECF No. 166-3)).[11]

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss all Claims in the Amended Complaint Against Defendant Tyrone Crowder (ECF No. 154), the Motion to Dismiss all Claims in Amended Complaint Against Defendant Wallace Singletary (ECF No. 155); and Defendant Dupree's Motion to Dismiss (ECF No. 156) are all DENIED.

A separate Order follows.

Dated:          November 19, 2019

_____/s/_____
Richard D. Bennett
United States District Judge

---

[11] This Court will reexamine this position should the evidence reveal that Plaintiff was not, in fact, a pretrial detainee.