IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN YOUNGER,        *

    Plaintiff,        *

    v.        *        Civil Action No. RDB-16-3269

JEMIAH L. GREEN, *et al.*,        *

    Defendants.        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Kevin Younger alleges that Sergeant Kwasi Ramsey ("Ramsey"), Sergeant Jemiah Green ("Green"), and Correctional Officer Richard Hanna ("Hanna") of the Maryland Department of Public Safety & Correctional Services ("DPSCS") assaulted him while he was incarcerated in the Maryland Reception, Diagnostic & Classification Center ("MRDCC"). In addition to Ramsey, Green, and Hanna, Younger also sues three supervisory employees: former MRDCC Warden Tyrone Crowder ("Crowder"), Major Wallace Singletary ("Singletary"), and Lieutenant Neil Dupree ("Dupree"). In August 2017, this Court dismissed the State of Maryland from this action on sovereign immunity grounds, prompting Younger to sue the State in the Circuit Court for Baltimore City, Maryland. (Mem. Op. of Aug. 22, 2017, ECF No. 72.) In June 2019, a jury returned a verdict in Younger's favor. (Verdict Sheet, ECF No. 166-5.)

In August 2019, following proceedings in the State action, Defendants Crowder, Singletary, and Dupree moved to dismiss the claims against them.[1]  This Court denied the Motions in November 2019. (Mem. Op. of Nov. 19, 2019, ECF No. 188.)  Now pending are three Motions[2] for Summary Judgment: Defendant Crowder's Motion for Summary Judgment (ECF No. 185); Defendant Dupree's Motion for Summary Judgment (ECF No. 186); and the Motion for Summary Judgment for all Claims in Amended Complaint against Defendant Wallace Singletary (ECF No. 187).  The Court has reviewed the parties' submissions and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons stated herein, Defendant Crowder's Motion for Summary Judgment (ECF No. 185) is GRANTED IN PART and DENIED IN PART.  Specifically, Summary Judgment is ENTERED in Crowder's favor on Younger's claim that Crowder exhibited deliberate indifference to Younger's medical needs and the false charges entered against him, but is DENIED as to all other claims asserted against him.  Defendant Dupree's Motion for Summary Judgment (ECF No. 186) and the Motion for Summary Judgment for all Claims in Amended Complaint against Defendant Wallace Singletary (ECF No. 187) are DENIED *in toto*.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).  This Court also takes judicial notice of the State action, *Younger v. Maryland*,

---

[1] Defendants Ramsey, Green, and Hanna are proceeding *pro se*.
[2] On December 9, 2019, the parties filed several motions *in limine* which will be resolved in due course.

Case No. 24-C-17-004752 (Balt. City Cir. Ct.), filed Sept. 21, 2017. This Court has recited the factual allegations in this case in two prior opinions. (ECF Nos. 72, 188.) For purposes of adjudicating the pending Motions for Summary Judgment, this Court presents an overview of the events and communications preceding Younger's assault.

During the trial in the State action, Richard Hanna testified that MRDCC was "pretty lawless" and that officer misconduct "goes from the top down." (Hanna Test., Trial Tr. June 5, 2019, 22:13-15, ECF No. 195-18.) Hanna testified at length on these matters, claiming that he carried out ordered hits against inmates "twice a week on average." (*Id.* at 22:5-9.) Hanna's comments at trial echo his earlier representations to an Internal Investigative Unit ("IIU") Detective following Younger's assault on September 30, 2013, in which he confessed to attacking Younger and described his assaults against other inmates that day. (Hanna Statement to Det. Wright, Feb. 26, 2015, ECF No. 195-17.)

Long before Ramsey, Green, and Hanna assaulted Younger on September 30, 2013, Warden Crowder was made aware of the assailant's violent proclivities and the general lawlessness pervading MRDCC. Between 2006 and 2009, Crowder served as Assistant Warden to Warden Felicia Hinton. During that time, Hinton recalls that Green "body slammed an inmate onto the floor" and knocked a handcuffed inmate to the ground. (Hinton Dep. 24:1-5, ECF No. 195-9.) Hinton discussed Green's behavior with Crowder sometime prior to 2013 and specifically told Crowder that Green "was trouble." (*Id.* at 133:8-12, 170:19-21.) As one of her last acts as Warden in 2009, Hinton moved Green to the overnight shift so that he would have fewer contacts with inmates. (*Id.* at 26:16-27:4, 113:14-17.) As soon as

Hinton left MRDCC, Crowder—now acting as Warden—transferred Green back to the dayshift. (*Id.* at 113:14-22.)

Suzanne Fisher, a DPSCS employee of 42 years who retired in 2015, also brought her concerns to Crowder. Fisher served as Assistant Warden to Warden Crowder from 2010 until 2013. (Fisher Dep. 11:9-20, ECF No. 195-12.) She became the Warden of MRDCC after Crowder was removed from the position in October 2013. (*Id.* at 11:18-12:4.) Fisher recalled that several officers, including Green and Ramsey, "always appeared in uses of force" reports (Fisher Statement to Det. Murray, 24:23-25, ECF No. 195-7.) In her interview with an investigator shortly after the Younger assault, Fisher explained that she had brought her concerns with these officers to Crowder. (*Id.* at 25:1-4.) In response, Crowder merely indicated that reports concerning the officers were to be expected because they were often first responders. (*Id.* at 25:5-6.) Fisher pressed the issue, responding: "I know, but if you're suspending 'em [sic] for uses of force, then you know you've got an issue. Excessive use of force, when you're suspending people, then you know you have an issue." (*Id.* at 25:6-8.) Several years later, during the State Court trial, Fisher claimed that she was only concerned that the officers would fail to transport inmates to the medical facility on time or "mess[] with their food." (Fisher Test., Trial Tr., June 4, 2019, at 230:10-14, ECF No. 185-14.)

Crowder also learned of Ramsey and Green's violent tendencies from Raymond Peré, who worked as an Investigative Captain between 2012 and 2013. (Peré Dep. 13:16-20, ECF No. 195-14.) Peré reported directly to Crowder. (*Id.* at 13:21-22.) In the spring of 2013, Peré notified Crowder that he was concerned with "unnecessary or avoidable uses of force." (*Id.*

at 29:8-13.)   In his October 2013 interview with an investigator, Peré recalled reporting an instance of "excessive use of force"[3] to Crowder in which an officer "sprayed [an] inmate through the [food] slot" even though the prisoner was "in a cell . . . in a secure area."  (Peré Statement to Det. Murray 13:9-14:2, ECF No. 195-10.)  Crowder disregarded Peré's concerns, responding "oh, that's a knee jerk reaction." (*Id.* 14:1-2.)   In the same interview, Peré also recalled telling Crowder "you got some staff here like [sic] to put their hands on inmates. . . . They take the opportunity, when it arises, to put their hands on inmates . . . . [Y]ou need to do something with 'em." (*Id.* 16:5-20.)   When Peré perceived that Crowder had not taken appropriate action, he administered impromptu use of force training to Green and other officers.  (*Id.* at 17:13-18.)

The actions of Ramsey, Green, and Hanna were well documented. At the time of Younger's assault, Ramsey and Green had four pending criminal assault investigations.  (IIU Case Histories for Green and Ramsey, ECF No. 195-6.)  In the investigation report produced following Younger's assault, Detective Murray wrote: "During this investigation, I requested and received a copy of the Use of Force reports that had occurred at MRDCC between September 2012 and October 2013.  There were approximately thirteen (13) Use of Force incidents during that period of time.  Out of those thirteen (13) Use of Force incidents, one incident did not include Sergeant Ramsey, Sergeant Green, or CO II Hanna." (IIU 13-35-01347 at 14, ECF No. 195-2.)   In the State Court trial, Crowder testified that he had an

---

[3] Later in his interview, Peré re-characterized this event as "unnecessary" rather than "excessive" use of force.  (Peré Dep. 14:8-14.)

"opportunity to see all written use of force reports before they were completely final." (Crowder Test., Trial Tr., June 10, 2019, 284:15-19, ECF No. 195-4.)

Despite repeated warnings and well-documented red flags, Crowder is alleged to have failed to take adequate steps to protect Younger and inmates like him from assaults by correctional officers. On September 29, 2013, Correctional Officer Alade Ganiyu was assaulted by inmate Raymond Lee. (Younger Dep. 30:15-37:17, ECF No. 185-5.) The next day, on September 30, 2013, Ramsey, Green, and Hanna assaulted Younger and other inmates in misplaced retaliation for the assault on Officer Ganiyu. (Hanna Dep. 62:7-15, ECF No. 185-3; Younger Dep. 67:6-68:21.) Later that day, Ramsey and Green returned and transported Younger to the medical unit, where he was treated by a nurse and Virenda V. Chhunchha, M.D. (Younger Dep. 96:9-13; Chhunchha Dep. 21:3-4, ECF No. 185-15.) Following his assault, Younger was administratively charged in connection with the assault against Ganiyu and was required to serve a term of solitary confinement.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton*

*Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

### I.   Admissibility of IIU Reports.

Defendant Crowder argues that there is no "admissible evidence" indicating that he knew about "widespread and pervasive premeditated and retaliatory assaults on inmates."

(Crowder Mot. 17, ECF No. 185-1.)  In his Response, Plaintiff characterizes this argument as a "preview" of Crowder's expected attempts to exclude Internal Investigative Unit reports concerning Younger's assault, and counters that the IIU reports are admissible as public records under Federal Rule of Evidence 803(8).  (Younger Resp. 41, ECF No. 195.)  Crowder has since filed a motion *in limine* seeking to exclude some of these materials from evidence at trial, contending that the IIU reports do not fall within the ambit of Rule 803(8).  (ECF Nos. 205, 206.)

At this stage, this Court need not resolve whether the IIU reports, or some portion thereof, would be admissible at trial.  At summary judgment, "the relevant question is not the admissibility of the evidence's current form but whether it can be presented in an admissible form at trial." *Manzur v. Daney*, PWG-14-2268, 2017 WL 930125, at *1 n.2 (D. Md. Mar. 9, 2017) (quoting Steven S. Gensler, 2 *Federal Rules of Civil Procedure, Rules & Commentary*, R. 56 (West 2017)).  Much of the relevant material presented in the IIU reports may be presented in the form of witness testimony.  For example, Plaintiff intends to call Fisher, Hinton, and Peré at trial (*see* Plaintiff's Proposed Witness and Exhibit List, ECF No. 191), each of whom may testify to the same matters disclosed in the course of the IIU investigations.  Accordingly, this Court will consider the IIU reports in their entirety, including statements made to IIU detectives, to resolve the pending summary judgment motions.

## II.    Exhaustion of Administrative Remedies.

Dupree seeks dismissal of Younger's claims based on his failure to fully exhaust his administrative remedies in accordance with the Prisoner Litigation Reform Act ("PLRA"),

42 U.S.C. § 1997e.  (Dupree Mot. 3-16, ECF No. 186-1.)  The PLRA provides in pertinent

part that:

> No action shall be brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, "the term 'prisoner' means any person

incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or

adjudicated delinquent for, violations of criminal law or the terms and conditions of parole,

probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).  The phrase "prison

conditions" encompasses "all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983 (2002).

 Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement.

Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded

and proven by the defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16, 127 S. Ct. 910 (2007);

*Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).  Nevertheless, a

claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at

220, 127 S. Ct. 910.  In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850,

1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S. Ct.

at 1856 (citing *Miller v. French*, 530 U.S. 327, 337, 120 S. Ct. 2246 (2000) (explaining "[t]he

mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")).

A prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he ... PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93, 126 S. Ct. 2378 (2006). The Court is nevertheless "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

A prisoner is only required to exhaust "available" remedies that "are capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (citation and quotation marks omitted). In *Ross,* the Supreme Court identified three circumstances in which an administrative remedy procedure may be unavailable: (1) if it operates as a simple "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) if the administrative scheme is "so confusing" or "opaque that it becomes, practically speaking, incapable of use"; or (3) if prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In this case, the parties spar over the extent to which the Maryland Department of Public Safety and Correctional Services' administrative remedy procedure ("ARP") is "available" upon the initiation of a parallel investigation by the Internal Investigative Unit. Under the ARP process, an inmate must first file a request for administrative remedy with the

prison's warden. Department of Correction Directive ("DCD") 185-002 § V.B.1; *see also* DCD 185-003. If the warden denies the ARP or fails to respond to it within an established time frame, the prisoner may file an appeal to the Commissioner of Corrections. Next, if the Commissioner of Corrections denies the inmate's appeal, he may file a grievance with the Inmate Grievance Office. Md. Code Regs. ("COMAR") 12.02.28.18; Md. Code Ann., Corr. Servs. § 10-206(a); COMAR 12.07.01.05(B). The prisoner's IGO filing must attach several documents, including: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). Upon receipt, the IGO conducts a "preliminary review" of the submission and may dismiss the complaint upon determination that it is "wholly lacking in merit on its face." Corr. Servs. 10-207(a)-(b)(1); COMAR 12.07.01.06A-B.

If the IGO is unable to determine that the complaint is meritless, it must refer the matter to the Maryland Office of Administrative Hearings for adjudication by an administrative law judge. Corr. Servs. § 10-207(c); COMAR 12.07.01.07A. If the ALJ concludes that the inmate's complaint is wholly or partially meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the ALJ. *See* COMAR 12.07.01.10(B); Corr. Servs. § 10-209(b)(2)(C). The inmate may seek judicial review of this decision, as well as of the IGO's decision to dismiss on preliminary review and the ALJ's decision to dismiss. Corr. Servs. § 10-210(b)(1). Judicial review in state court is not

required to satisfy the PLRA's administrative exhaustion requirement. *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

The ARP process is not the only means of pursuing complaints against Maryland prison officials. Separately, the Internal Investigative Unit may investigate allegations of employee misconduct, including the use of excessive force. Md. Code Regs. 12.11.01.05(A)(3). When such an investigation is undertaken, the Department of Public Safety & Correctional Services' regulations direct the warden to dismiss a prisoner grievance if it shares the "same basis" as a pending IIU investigation. DCD 185-003 § VI.N.4. The dismissal must state: "Since this case shall be investigated by the IIU, no further action shall be taken within the ARP process." *Id.*

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court considered, *inter alia*, whether Maryland's ARP process was truly "available" for purposes of the PLRA upon the initiation of an IIU investigation. The Court noted that Maryland's grievance process had "some bewildering features" and expressed exasperation with the confounding interplay between the ARP and IIU process. *Id.* at 1860. On the one hand, the Court observed, Maryland prison wardens typically deny an ARP grievance while an IIU inquiry was underway. *Id.* at 1860-61. On the other hand, some prisoners were able to appeal the warden's dismissal based on the IIU inquiry, pursue their claims up the chain of the IGO, and receive a decision on the merits. *Id.* at 1861. Ultimately, the Court remanded the case to the Fourth Circuit with instructions to undertake a "thorough review" of ARP materials to determine the extent to which the ARP process was in fact "available" to litigants upon the commencement of an IIU inquiry.

Since *Ross*, this Court has repeatedly held that the availability of the IIU process "closes the door" to the ARP process. *Brightwell v. Hershberger*, DKC-11-3278, 2016 WL 4537766, at *8 (D. Md. Aug. 31, 2016). In other words, the administrative remedy procedure is rendered unavailable upon the commencement of an investigation by the Internal Investigative Unit. This conclusion is supported by the Department's regulations, discussed *supra*, which directs wardens to dismiss grievances upon determining that a parallel IIU investigation is underway. Accordingly, an IIU investigation fully satisfies the PLRA' exhaustion requirement. *See Carmichael v. Buss*, TDC-14-3037, 2017 WL 2537225, at *5 (D. Md. June 9, 2017); *Oakes v. Dep't of Pub. Safety*, GLR-14-2002, 2016 WL 6822470, at *4-5 (D. Md. Nov. 18, 2016); *Brightwell*, 2016 WL 4537766, at *8.

Defendants contend that *Brightwell* and *Oakes* are fatally flawed decisions because they ignore that the inmate-plaintiffs in those cases were able to proceed through the ARP process despite the existence of an IIU investigation. In a similar vein, Defendants suggest that the ARP process remained available to Younger despite the IIU investigation because another inmate, Raymond Lee, was able to successfully proceed through the ARP procedures. (Dupree Mot. 12, ECF No. 186-1.) An "available" administrative process, however, cannot turn on a petitioner's steadfast refusal to accept the Department's own procedural rules, which require dismissal of grievances when a parallel IIU investigation is underway. In the words of the United States Supreme Court, this "seemingly unusual process" is "perplexing in relation to normal appellate procedure." *Ross*, 136 S. Ct. at 1861; *see also Carmichael*, 2017 WL 2537225, at *5 (discussing how the Supreme Court revealed the "absurdity of this approach" in *Ross*). A process which is only "available" to the extent that a petitioner seeks to circumvent it through

dogged, and evidently meritless, appeals is in fact not "available" at all. It is too "opaque" to be "capable of use." *Ross*, 136 S. Ct. at 1859.

In this case, Younger claims that he "kept filling" out timely ARPs but "never heard back" because he had been transferred from MRDCC to another institution to serve a term of solitary confinement, a punishment imposed for his alleged involvement in the Ganiyu assault. (Younger Dep. 157:5-158:13.) Dupree has attached to his Motion for Summary Judgment the declaration of a previously undisclosed witness, Executive Director of the IGO F. Todd Taylor, Jr., who avers that the IGO's records contain only one grievance filed by Younger dated March 28, 2014 and that the IGO dismissed the grievance on November 25, 2014. (Taylor Decl. ¶ 5, ECF No. 186-4.) Younger claims that he was unable to present relevant documents to the IGO for its review because those documents had been confiscated from him when he was committed to solitary confinement. (Younger Resp. 48, ECF No. 195.)

The Court need not resolve disputes concerning Younger's adherence to the ARP process because the IIU investigation satisfied his obligation to subject his claims to administrative exhaustion. In this case, there is no dispute that the IIU undertook an investigation concerning Younger's assault. Had Younger filed an ARP within the allotted time period, it would have been subject to dismissal pursuant to DCD 185-003 § VI.N.4. The mere fact that Younger *potentially* could have skirted around this rule by advancing his claims up the chain of review is of no great moment. Such a procedural mechanism is not truly "available" in any meaningful sense and Younger was not required to pursue it. Accordingly,

Younger has satisfied his administrative exhaustion requirements and the PLRA does not bar his claims.

## III.    Res Judicata and Judicial Estoppel.

In his Motion for Summary Judgment, Defendant Crowder argues that he is entitled to judgment as a matter of law on all claims asserted against him based on the doctrine of *res judicata* and principles of judicial estoppel.  (Crowder Mot. ¶¶ 1, 5, ECF No. 185.)  Defendants Dupree and Singletary have adopted these portions of Crowder's Motion.  (Dupree Mot. 3, 16, ECF No. 186-1; Singletary Mot. 3, ECF No. 187-1.)  These same arguments were presented in the Defendants' motions to dismiss and were rejected by this Court.  (ECF No. 188.)  Accordingly, this Opinion does not address these arguments.

## IV.    Younger's State Law Claims Against Crowder, Dupree, and Singletary.

In Counts Four, Eight, and Nine, Younger brings claims under Maryland law against Crowder, Dupree, and Singletary.  In Count Four, Younger sues for violations of Maryland Declaration of Rights, Article 24.  Specifically, Younger alleges violations of his right under the Maryland Declaration of Rights "to bodily integrity, to be secure in his person from excessive force, and to be free from known risks of serious physical harm." (Am. Compl. ¶ 122, ECF No. 140.)  In Count Eight, Younger brings a claim of negligent retention, training, and supervision against Crowder, Dupree, and Singletary.  Finally, in Count Nine, Younger alleges that Crowder, Dupree, and Singletary acted negligently.

Crowder argues that he is immune to these claims under the Maryland Tort Claims Act because "Mr. Younger does not allege, and there is no evidence in the record to show, that

Mr. Crowder acted with malice or gross negligence." (Crowder Mot. 11, ECF No. 185-1.) Dupree and Singletary do not join this argument.

The Maryland Tort Claims Act affords immunity to state officials for tortious acts or omissions "committed within the scope of their duties when the violations are made 'without malice or gross negligence.'" *Housley v. Holquist*, 879 F. Supp. 2d 472, 482–83 (D. Md. 2011) (quoting *Lee v. Cline*, 863 A.2d 297, 304 (Md. 2004)). In this context, "malice" means "actual malice" or "conduct 'characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Lee v. Cline*, 384 Md. 245, 268, 863 A.2d 297, 311 (2004). "[A]n officer's actions are grossly negligent 'when they are 'so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences.'" *Housley v. Holquist*, 879 F. Supp. 2d 472, 482-83 (D. Md. 2011) (quoting *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011)). The Fourth Circuit has made clear that "[w]hether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury." *Henry*, 652 F.3d at 536 (citing *Taylor v. Harford County Dep't of Soc. Servs.*, 862 A.2d 1026, 1034 (Md. 2004)).

Plaintiff has presented sufficient evidence to raise a genuine dispute of fact concerning whether Crowder exhibited malice or gross negligence.[4] Throughout his tenure at MRDCC,

---

[4] As noted in this Court's prior Memorandum Opinion, Younger has withdrawn his gross negligence cause of action. (Mem. Op. 22 n.9, ECF No. 188.) Nevertheless, he has sufficiently alleged gross negligence. A plaintiff may pursue a negligence claim against a state official so long as the plaintiff has also alleged facts supporting a gross negligence claim. *See Catterton v. Coale*, 84 Md. App. 337, 579 A.2d 781 (Md. Ct. Spec. App.

Crowder's staff repeatedly warned him about the dangers that Ramsey, Green, and Hanna posed to inmates. There is evidence that Crowder chose to disregard these warnings rather than take appropriate corrective action. For example, there is evidence that Crowder brushed aside Fisher's concerns about Ramsey and Green's frequent appearance in use of force reports; disregarded Peré's complaints about inmate abuses; turned a blind eye to pervasive violence against inmates; and even acted to ensure that Green was placed near inmates despite his predecessor's warnings that he was "trouble" and efforts to remove him from the prison population. This evidence is sufficient to generate a genuine dispute of material fact as to whether Crowder displayed, at the very least, an "indifference to [the] consequences" of permitting Ramsey, Green, and Hanna to go unchecked. Accordingly, Younger's state law claims may proceed to a jury.

## V. Younger's Incarceration Status.

As in their motions to dismiss, Defendants argue in their summary judgment submissions that Younger was not a "pre-trial detainee" but rather a full-fledged prisoner. The distinction is material because a different legal framework may apply to Younger's state and federal constitutional claims depending on his incarceration status. (Crowder Mot. 15, ECF No. 185-1.) In his Motion to Dismiss, Crowder sought dismissal of Younger's claims under Article 24 of the Maryland Declaration of Rights because Younger was a prisoner, not a pre-

---

1990) (holding that negligence claim against a county social worker should not have been dismissed as barred by the MTCA because plaintiff alleged that defendant social worker fabricated a report, thereby exhibiting malice or gross negligence); *Ross v. Cecil Cnty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 623 (D. Md. 2012) ("The complaint need not expressly assert that the defendants acted with malice or gross negligence if it 'alleges facts that . . . could establish actual malice if ultimately supported by evidence and believed by a fact finder.'" (quoting *Muhammad v. Maryland*, ELH-11-3761, 2012 WL 987309, at *2 (D. Md. Mar. 20, 2012))). *But see Walker v. Maryland*, MJG-16-3136, 2017 WL 3730349, at *9 (D. Md. Aug. 30, 2017) (summarily dismissing plaintiff's negligence claims and "any other common law claims based on negligent conduct" as barred by the MTCA).

trial detainee, and—Crowder argued—prisoners must pursue excessive force claims under Articles 16 and 25. (Crowder Mot. to Dismiss 33-34, ECF No. 154-1.) Younger has consistently maintained that he was a pre-trial detainee, argued that he may bring claims under Article 24, and urged the application of a more lenient, "objective" standard to his federal constitutional claims based on his incarceration status.

In a prior Memorandum Opinion (ECF No. 188), this Court rejected Defendants' calls to classify Younger a prisoner rather than a pre-trial detainee because "[a]ll parties to the State Court proceedings acknowledged" that Younger was a pre-trial detainee. (Mem. Op. 26-27, ECF No. 188.) Nevertheless, this Court noted that it would reconsider the issue should the evidence reveal that Younger was not a pre-trial detainee. (*Id.* at 27 n.11.) Now, at Summary Judgment, Crowder offers the Declaration of Judith Hemler, Deputy Director of the DPSCS Commitment Office, to argue that Younger was a convicted prisoner at the time of the attack. (Hemler Decl. ¶ 5, ECF No. 185-7.) Younger protests that Hemler was not disclosed as a witness until five weeks past the discovery deadline and less than sixty days before trial. (Younger Resp. 9, ECF No. 195.) Younger maintains that the issue should no longer be in dispute because Crowder agreed during the State trial that Younger was only "briefly" at MRDCC "as a part of a pretrial process." (Crowder Test., Trial Tr., June 10, 2019, 266:1-4, ECF No. 195-4.) Moreover, counsel from the Office of the Attorney General—which is now representing Crowder, Dupree, and Singletary—formerly represented in prior litigation that Younger was a pre-trial detainee. (State's Motion *in Limine*, State Case, Paper No. 60/0, ECF No. 166-1; Join Statement of Facts, State Case, Paper No. 72/0, ECF No. 166-3.)

It can no longer be disputed that Younger was a pre-trial detainee.  It is highly irregular for Crowder and his counsel to contradict their representations in the Sate case by asserting otherwise.  The testimony of Judith Hemler was disclosed well after discovery had concluded and will be excluded from this Court's consideration and from trial.  No other evidence suggests that Younger was a prisoner rather than a pre-trial detainee.  Accordingly, Younger shall be deemed a pre-trial detainee for purposes of this case.

## VI.    Younger's Federal Constitutional Claims.

In Count One of the Amended Complaint, Younger brings claims under the auspices of 42 U.S.C. § 1983.  Specifically, Younger alleges that Crowder, Dupree, and Singletary violated the following rights protected by the Eighth and Fourteenth Amendments to the United States Constitution: "(a) the right to be free from the use of excessive and unreasonable force and seizure; (b) the right to be free from a deprivation of life and liberty without due process of law; (c) the right to be free from known risks of serious physical harm; (d) the right to be free from deliberate indifference for a serious medical need; and (e) the right to be free from objectively unreasonable conduct that causes, or has the potential to cause, constitutional harm." (Am. Compl. ¶ 113, ECF No. 140.)

Younger pursues these claims against Crowder, Dupree, and Singletary under a theory of supervisory liability.  To establish supervisory liability under § 1983, Younger must show:

> (1) that the supervisor had actual or constructive knowledge that h[is] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;

> (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and
>
> (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). To show a pervasive and unreasonable risk of constitutional injury, Younger must produce evidence that inmate assaults were "widespread, or at least used on several different occasions and that the conduct engaged in by the subordinates poses an unreasonable risk of harm of constitutional injury." *Id.* To satisfy the second element, Younger may prevail "by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* To meet the third element, Younger must present "direct" proof of causation "where the policy commands the injury of which plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Id.* Ultimately, the issue of supervisory liability "is ordinarily one of fact, not law." *Shaw*, 13 F.3d at 799.

Crowder seeks summary judgment on all of Younger's § 1983 claims, arguing that there is "no admissible evidence" that Crowder knew of "widespread and pervasive premeditated and retaliatory attacks by MRDCC staff on inmates" or was "deliberately indifferent to Younger's medical needs or to false charges asserted against him."[5] (Crowder Mot. 17-21, ECF No. 185-1.)

---

[5] Crowder also argues that there is no evidence that he was aware that Ramsey, Green, and Hanna would attack Younger on September 30, 2013. As this Court has previously held in this case (Mem. Op. 26, ECF No. 188), Younger need not demonstrate that Crowder was aware of a potential attack against Younger,

## A. Younger must show "subjective deliberate indifference."

As a preliminary matter, Younger argues that he need not show "subjective deliberate indifference" to sustain a claim of supervisory liability against Crowder because he was a pre-trial detainee, not a prisoner. Younger is correct that pre-trial detainees need not show that their assailants had a particular subjective state of mind when using excessive force. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015). Supervisory liability, however, *always* requires a showing of deliberate indifference on the part of the supervisor. *See, e.g., Thompson v. Friday*, JKB-18-2186, 2019 WL 6528975, at *4 (D. Md. Dec. 4, 2019) (applying traditional supervisory liability framework to claim against supervisor for subordinates' use of excessive force against pre-trial detainee); *Ozah v. Fretwell*, CCB-18-1063, 2019 WL 4060387, at *8-9 (D. Md. Aug. 28, 2019) (applying "deliberate indifference" state of mind requirement in pre-trial detainee case and collecting cases for support).

## B. Crowder's knowledge of widespread and pervasive assaults against inmates.

There is sufficient evidence in the record to raise a genuine dispute as to whether Crowder knew of widespread inmate abuses. Despite explicit warnings about Ramsey and Green's behavior from Hinton, Fisher, and Peré, there is no evidence that Crowder took any significant measures to prevent attacks on inmates. Although Assistant Warden Fisher, Chief of Security Presbury, and Captain Joyner all claimed to have been unaware of prior attacks against inmates conducted in retaliation for assaults against correctional officers, and expressed surprise that Ramsey, Green, and Hanna retaliated against Younger, Crowder read

---

but rather must show that Crowder was aware of a substantial risk of harm to those *like* Younger (*i.e.*, prisoners at MRDCC). *See Shaw*, 13 F.3d at 799.

the numerous use of force reports bearing Ramsey and Green's name, heard warnings about Green from Hinton years before the assault, and listened to Peré's complaints about "unnecessary" uses of force. Hanna, moreover, has testified that he frequently participated in attacks against inmates and that misconduct "goes from the top down." At the summary judgment stage, this Court may not resolve the factual disputes generated by the testimony of Fisher, Hanna, Hinton, Joyner, Peré, and Presbury. It is for the jury to determine whether Crowder had actual or constructive knowledge of the threat facing MRDCC inmates and exhibited deliberate indifference to that threat.

### C. Deliberate indifference to Younger's medical needs.

To prevail on his "medical needs" claim, Younger must demonstrate: "(1) the supervisory defendants failed promptly to provide [him] with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Barnes v. Wilson*, 110 F. Supp. 624, 631-32 (D. Md. 2015) (quoting *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)).

Younger has not adduced sufficient evidence to generate genuine disputes of material fact on this issue. Although there is evidence that Crowder's response to Younger's assault was deficient in many respects (*see* IIU 13-35-01359, ECF No. 195-3), it is undisputed that Younger was transported to the medical unit immediately after he sustained his injuries, albeit by his assailants. (Younger Dep. 94:6-11.) There is no evidence that Crowder deliberately interfered with Younger's medical procedures. Finally, Younger does not present evidence

that Crowder was aware of a widespread, well documented lack of medical attention to inmates as supervisory liability ordinarily requires. Younger has failed to raise a genuine dispute of material fact with respect to this claim. Accordingly, Summary Judgment is granted in favor of Crowder on Younger's claim that Crowder is liable for exhibiting deliberate indifference to Younger's medical needs.

### D. Deliberate Indifference to false charges against Younger.

Younger's claim that Crowder exhibited deliberate indifference to false charges brought against him is also unavailing because Younger has failed to show that the charges produced a constitutional deprivation. "An inmate has no constitutional right to be free from being falsely or wrongly accused of conduct." *Cooper v. Shearin*, JFM-10-3108, 2011 WL 6296799, at *3 (D. Md. Dec. 15, 2011). So long as an inmate is "granted a hearing, and had the opportunity to rebut the unfounded or false charges," the mere filing of a false charge against an inmate does not work a constitutional harm. *Id.* (quoting *Freeman v. Rideout*, 808 F.2d 949, 952-53 (2d Cir. 1986). There is no dispute that Younger was granted a hearing on the administrative charges brought against him. Younger provides no evidence to support his claim that he "could not call witnesses, present evidence, or rely on investigative documents" to present a defense at his administrative hearing. (Younger Resp. 11, ECF No. 195.) Moreover, there is no evidence that Crowder could have prevented Younger from facing these charges. Younger was not found guilty of these charges until October 21, 2013, two weeks after Crowder was removed from the Warden position. (Hearing Tr., Oct. 21, 2013, 25:9-14, ECF No. 207-3.) Accordingly, summary judgment is granted in favor of Crowder on

Younger's claim that Crowder exhibited deliberate indifference to the filing of false charges against Younger.

In summary, Younger has raised a genuine dispute concerning Crowder's deliberate indifference to assaults against inmates, and may proceed to trial on that theory. Younger may not, however, proceed to trial on his theory that Crowder exhibited deliberate indifference to his medical needs or to false charges pursued against him.

## VII.    Qualified Immunity.

Crowder contends that he is shielded from liability as to Younger's § 1983 claims under the doctrine of qualified immunity. "Qualified immunity shields government officials from liability in a § 1983 suit as long as their conduct has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right . . . , and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *Id.* (quoting *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007)). "The answer to both questions must be in the affirmative to defeat the officer's entitlement to immunity." *Id.*

Seizing on a footnote from a Supreme Court opinion, Crowder argues that the law was not sufficiently clear so as to put him on notice that his actions—or inactions—were

unconstitutional. *See Farmer v. Brennan*, 511 U.S. 825, 834 n.3, 114 S. Ct. 1970 (1994) (declining to resolve "at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes"). With this citation, Crowder appears to be arguing that officials can *never* be held liable under a supervisory liability theory because the Supreme Court has declined to precisely quantify when a risk of constitutional injury becomes sufficient to trigger liability.

Fourth Circuit precedent sufficiently notified Crowder that failing to take action to protect inmates from abuses at the hands of correctional officers could lead to supervisory liability under § 1983. The Fourth Circuit has recently affirmed that prisoners "have an Eighth Amendment right to be protected from malicious attacks, not just by other inmates, but also from the very officials tasked with ensuring their security" and that this right was clearly established as of April 2010. *Thompson v. Virginia*, 878 F.3d 89, 109 (4th Cir. 2017). Accordingly, qualified immunity cannot shield Crowder from Younger's claims.

## CONCLUSION

For the foregoing reasons, Defendant Crowder's Motion for Summary Judgment (ECF No. 185) is GRANTED IN PART and DENIED IN PART. Specifically, Summary Judgment is ENTERED in Crowder's favor on Younger's claim that Crowder exhibited deliberate indifference to Younger's medical needs and the false charges entered against him, but is DENIED as to all other claims asserted against him. Defendant Dupree's Motion for Summary Judgment (ECF No. 186) and the Motion for Summary Judgment for all Claims in Amended Complaint against Defendant Wallace Singletary (ECF No. 187) are DENIED *in toto*.

A separate Order follows.

Dated:        December 19, 2019

_____/s/_____
Richard D. Bennett
United States District Judge