IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEVIN YOUNGER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-16-3269 |
| JEMIAH L. GREEN, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Kevin Younger ("Plaintiff" or "Younger"), brought this action against Sergeant Jemiah Green ("Green"), Sergeant Kwasi Ramsey ("Ramsey"), and Correctional Officer Richard Hanna ("Hanna") of the Maryland Department of Public Safety & Correctional Services ("DPSCS"), alleging that Green, Ramsey, and Hanna assaulted him while he was incarcerated in the Maryland Reception, Diagnostic & Classification Center ("MRDCC"). In addition to Green, Ramsey, and Hanna, Younger also sued three supervisory employees: former MRDCC Warden Tyrone Crowder ("Crowder"), Major Wallace Singletary ("Singletary"), and Lieutenant Neil Dupree ("Dupree").

This case proceeded to a jury trial on January 21, 2020 against Defendants Green, Ramsey, Hanna, Crowder, Singletary, and Dupree. On January 29, 2020, this Court granted Defendant Singletary's Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a), entering judgment in favor of Singletary. (ECF No. 245.) On February 3, 2020, the jury returned a verdict in favor of Plaintiff against Defendants Crowder, Dupree, Green, Hanna, and Ramsey in the amount of $700,000.00. (ECF Nos. 265, 266.)

Currently pending before this Court are several post-trial motions: Defendant Crowder's Rule 50(b) Motion for Judgment or, in the Alternative, for Remittitur (ECF No. 279); *Pro se* Defendant Ramsey's Motion to Stay Enforcement of Judgement (ECF No. 280); Defendant Dupree's Motion for Remittitur (ECF No. 282); and *Pro se* Defendant Ramsey's Motion for Preparation of District Court's Transcripts at Government Expense (ECF No. 293). The Court has reviewed the parties' submissions and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant Crowder's Rule 50(b) Motion for Judgment or, in the Alternative, for Remittitur (ECF No. 279) is DENIED; *Pro se* Defendant Ramsey's Motion to Stay Enforcement of Judgement (ECF No. 280) is GRANTED as unopposed; Defendant Dupree's Motion for Remittitur (ECF No. 282) is DENIED; and *Pro se* Defendant Ramsey's Motion for Preparation of District Court's Transcripts at Government Expense (ECF No. 293) is DENIED AS MOOT.

## BACKGROUND

In considering a motion under Rule 50, the court views the evidence in the light most favorable to the non-movant. *Gregg* v. *Ham,* 678 F.3d 333, 341 (4th Cir. 2012). The background of this case has been discussed at length in this Court's November 19, 2019 Memorandum Opinion denying Defendants Crowder, Singletary, and Dupree's Motions to Dismiss (ECF No. 188) and in this Court's December 19, 2019 Memorandum Opinion addressing Defendants Crowder, Singletary, and Dupree's summary judgment motions (ECF No. 217).

In brief, Plaintiff's suit arises from a brutal assault on Plaintiff by Defendants Sergeant Green, Sergeant Ramsey, and Correctional Officer Hanna while Plaintiff was incarcerated in

the Maryland Reception, Diagnostic & Classification Center ("MRDCC"). On the morning of September 30, 2013, Green, Ramsey, and Hanna attacked Younger as he slept in his cell, brandishing a mace can, radios, and handcuffs used as brass knuckles. (Jan. 28, 2020 Trial Tr. at 41, ECF No. 296.) Younger's head was slammed against the concrete floor and against the toilet in his cell. (*Id.* at 42.) The assault lasted several minutes, after which Green, Ramsey, and Hanna left Younger unconscious in a pool of his own blood. (*Id.* at 43.)

Ramsey and Green returned about an hour later to bring Plaintiff to the medical unit, where they ordered Plaintiff to write that he "fell off the top bunk." (*Id.* at 48-50.) Younger sustained injuries to his face, head, wrists, ribs, right hand and right leg, and could not get out of bed for weeks due to the leg injury. (*Id.* at 51-52, 59.) Younger also reported headaches and anxiety months after the attack. (Pl.'s Trial Exhibit 3, ECF No. 298-9.) He spent several months in a prison hospital to treat his leg and head injuries. (Jan. 28, 2020 Trial Tr. at 66, ECF No. 296.) Younger returned to Maryland in 2014 and underwent surgery to repair his leg muscle in April 2018. (*Id.*) At trial, both Younger's medical expert and Defendant Crowder's medical expert agreed that Younger's injuries are permanent.

Defendants Hanna, Ramsey, and Green were convicted of their crimes in 2015 and 2016. *See State v. Hanna*, Case No. 114260031 (Balt. City Cir. Ct.), filed Sept. 17, 2014 (May 6, 2015 guilty plea of conspiracy to commit first degree assault); *State v. Ramsey*, Case No. 114260032 (Balt. City Cir. Ct.), filed Sept. 17, 2014 (April 1, 2016 guilty verdict on charges of second-degree assault and misconduct in office); *State v. Green*, Case No. 114260029 (Balt. City Cir. Ct.), filed Sept. 17, 2014 (April 1, 2016 guilty verdict on charges of second-degree assault and misconduct in office). On September 28, 2016, Younger filed this action, pursuing claims

under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, against his assailants (Defendants Hanna, Ramsey, and Green) and against the Division of Correction officials whom he contended were responsible—Defendants Warden Crowder, Major Singletary, and Lieutenant Dupree. In addition, Plaintiff sued the State of Maryland. (Compl., ECF No 1.) In August 2017, this Court dismissed the State of Maryland from this action on sovereign immunity grounds, prompting Younger to sue the State in the Circuit Court for Baltimore City, Maryland. (ECF No. 72.) In June 2019, a jury returned a verdict in Younger's favor in the State case. (ECF No. 166-5.)

In August 2019, following proceedings in the State action, Defendants Crowder, Singletary, and Dupree moved to dismiss the claims against them. This Court denied the Motions in November 2019. (ECF No. 188.) Defendants Crowder, Singletary, and Dupree also moved for summary judgment. (ECF Nos. 185, 186, 187.) This Court denied Defendants Singletary and Dupree's Motions *in toto*, but granted in part and denied in part Defendant Crowder's Motion, entering summary judgment in Crowder's favor on Younger's claim that Crowder exhibited deliberate indifference to Younger's medical needs and the false charges entered against him, but denying summary judgment as to the other claims asserted against Crowder. (ECF No. 217.) In addition, this Court found that qualified immunity did not shield Crowder from Younger's claims because Fourth Circuit precedent sufficiently notified Crowder that failing to take action to protect inmates from abuses at the hands of correctional officers could lead to supervisory liability under § 1983. (*Id.* at 25 (citing *Thompson v. Virginia*, 878 F.3d 89, 109 (4th Cir. 2017)).

On January 21, 2020, this case proceeded to a jury trial against Defendants Ramsey, Hanna, Green, Crowder, Singletary, and Dupree. On January 29, 2020, at the close of Plaintiff's case, this Court granted Defendant Singletary's Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a), entering judgment in favor of Singletary. (ECF No. 245.) The same day, Younger voluntarily dismissed with prejudice Counts III, IV, V, VI, VII, VIII, and IX of the Amended Complaint and dismissed his claim for punitive damages in Count II as to Defendants Green, Ramsey, and Hanna. (ECF Nos. 246, 247.) Accordingly, the remaining Counts for the jury's consideration were: Count I – Violation of the Fourteenth Amendment to the United States Constitution asserted against Defendants Tyrone Crowder and Neil Dupree under a theory of supervisory liability; and Count II – Violation of the Fourteenth Amendment to the United States Constitution asserted against Defendants Jemiah L Green, Richard N. Hanna, and Kwasi H. Ramsey. On February 3, 2020, the jury returned a verdict in favor of Plaintiff against Defendants Crowder, Dupree, Green, Hanna, and Ramsey in the amount of $700,000.00.[1] (ECF Nos. 265, 266.)

On February 18, 2020, Plaintiff filed a Motion for Attorneys' Fees and Litigation Costs. (ECF No. 268.) On February 19, 2020, Defendant Crowder filed a Motion to Stay Enforcement of the Judgment, arguing that, as an "agent" of the State of Maryland, he is not required to post a supersedeas or appeal bond pursuant to Local Rule 110.1.b. (ECF No. 269.) On February 21, 2020, *pro se* Defendant Ramsey filed an appeal with the United States Court of Appeals for the Fourth Circuit. (ECF No. 270.) On February 25, 2020, Defendant Dupree

---

[1] Defendants Green and Hanna acknowledged their liability. Accordingly, the jury was only asked to determine whether Defendant Ramsey was liable under Count II. (*See* Jury Verdict, ECF No. 265.)

5

filed a Motion to Stay Enforcement of the Judgment without posting bond, echoing Crowder's argument under Local Rule 110.1.b. (ECF No. 273.) On February 27, 2020, *pro se* Defendant Green filed an appeal with the Fourth Circuit. (ECF No. 276.) On March 2, 2020, Defendant Crowder filed a Motion for Judgment, or, in the Alternative, for Remittitur. (ECF No. 279.) Defendant Dupree also filed a Motion for Remittitur, adopting Defendant Crowder's arguments. (ECF No. 282.) Also on March 2, 2020, Defendant Ramsey filed a Motion to Stay Enforcement of Judgement, echoing Crowder's and Dupree's arguments under Local Rule 110.1.b. (ECF No. 280.) On March 6, 2020, Ramsey filed a Motion for Preparation of District Court's Transcripts at Government Expense. (ECF No. 293.)

On April 7, 2020, this Court denied without prejudice Plaintiff's Motion for Attorneys' Fees and Litigation Costs pending appeal and granted Defendants Crowder and Dupree's Motions to Stay Enforcement of the Judgment. (Letter Order, ECF No. 297.) The Court also extended the briefing deadlines for the following motions: Defendant Crowder's Rule 50(b) Motion for Judgment or, in the Alternative, for Remittitur (ECF No. 279); *Pro se* Defendant Ramsey's Motion to Stay Enforcement of Judgement (ECF No. 280); Defendant Dupree's Motion for Remittitur (ECF No. 282); and *Pro se* Defendant Ramsey's Motion for Preparation of District Court's Transcripts at Government Expense (ECF No. 293). (*Id.*) Those motions are now ripe.

## STANDARD OF REVIEW

Under Rule 50 of the Federal Rules of Civil Procedure, judgment as a matter of law should be granted against a party when that party "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that

issue." *Coryn Grp. II, LLC* v. *O.C. Seacrets, Inc.,* 868 F. Supp. 2d 468, 483 (D. Md. 2012) (citation omitted). Rule 50 permits a litigant to renew its motion for judgment as a matter of law even after judgment has been entered. Fed. R. Civ. P. 50(b). In considering a motion under Rule 50, the court views the evidence in the light most favorable to the non-movant, *Gregg* v. *Ham,* 678 F.3d 333, 341 (4th Cir. 2012), gives that party the benefit of all reasonable inferences from the evidence, *Whalen* v. *Roanoke Cnty. Bd. of Supervisors,* 769 F.2d 221, 224 (4th Cir. 1985), and asks whether there is "substantial evidence in the record to support the jury's findings," *Anderson* v. *Russell,* 247 F.3d 125, 129 (4th Cir. 2001) (citation omitted). However, "the court may not make credibility determinations or weigh the evidence." *Reeves* v. *Sanderson Plumbing,* 530 U.S. 133, 150-51 (2000) (quoting *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).

A litigant may also challenge a jury verdict and/or judgment under Rule 59 of the Federal Rules of Civil Procedure, but it is an "extraordinary remedy which should be used sparingly." *See Pacific Ins. Co. v. American Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998). Under Rule 59(a)(1)(A), a court may grant a new trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. As relevant here, a litigant's challenge to an excessive damages award may be pursued under Federal Rule 59(a) for a new trial *nisi remittitur. See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 593 (4th Cir. 1996). Whether a jury award is excessive is a question of law. *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 280 (4th Cir. 1999).

In an action based on federal question jurisdiction, such as this case, the court must apply the federal standard for remittitur. *See McCollum v. Daniel*, 136 F. Supp. 2d 472, 476 (D. Md. 2001), *aff'd*, 32 F. App'x 49 (4th Cir. 2002). Compensatory damages are deemed excessive

7

when they are "against the clear weight of the evidence, or based upon evidence which is false, or will result in a miscarriage of justice." *Id.* (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998)). If the court finds that a jury award is excessive, it may "grant a new trial *nisi* remittitur, which gives the plaintiff the option of accepting the remittitur or of submitting to a new trial." *Cline*, 144 F.3d at 305 n.2 (4th Cir. 1998). Unlike a motion under Rule 50, when considering a motion for a new trial under Rule 59, "a trial judge may weigh the evidence and consider the credibility of the witnesses." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989); *see also McCollum v. McDaniel*, 136 F. Supp. 2d 472, 475 (D. Md. 2001).

## ANALYSIS

Defendant Crowder seeks relief under Federal Rule of Civil Procedure 50(b), asking this Court to grant judgment in his favor notwithstanding the verdict because he asserts that the evidence was insufficient to establish liability under 42 U.S.C. § 1983 for deliberate indifference and that he is entitled to qualified immunity. (ECF No. 279.) In the alternative, Crowder seeks remittitur under Rule 59(a), requesting that the Court reduce the amount of the judgment to coincide with the evidence in the case and with judgments in similar cases. (*Id.*) Defendant Dupree also seeks remittitur and adopts and incorporates Crowder's arguments. (ECF No. 282.) As discussed below, Defendant Crowder's Rule 50(b) Motion for Judgment or, in the Alternative, for Remittitur (ECF No. 279) and Defendant Dupree's Motion for Remittitur (ECF No. 282) shall be DENIED.

Defendant Ramsey, proceeding *pro se*, has filed a Motion to Stay Enforcement of Judgment (ECF No. 280), seeking the same relief pursuant to Local Rule 101.1.b that the Court has already granted for Defendants Crowder and Dupree (ECF No. 297). Local Rule

110.1.b provides: "[u]nless otherwise ordered by the Court, the state of Maryland, any of its political subdivisions, and any agents thereof shall not be required to post a supersedeas or appeal bond." Local Rule 110.1.b (D. Md. 2018). Accordingly, Ramsey, as an agent of the State like Crowder and Dupree, shall not be required to post an appeal bond, and his Motion to Stay Enforcement of Judgment (ECF No. 280), which is unopposed, is GRANTED. In addition, Ramsey filed a Motion for Preparation of District Court's Transcripts at Government Expense (ECF No. 293), in which he seeks copies of the trial transcripts in this case. Ramsey's request is moot as all of the transcripts that were requested became publicly available, without restriction, on June 4, 2020. (*See* ECF Nos. 289, 290, 291, 292, 295, 296.) Accordingly, Ramsey's Motion for Preparation of District Court's Transcripts at Government Expense (ECF No. 293) is DENIED AS MOOT.

I. **Rule 50 Motion (ECF No. 279)**

Under Rule 50, Defendant Crowder asks this Court to grant him judgment notwithstanding the verdict on the basis that there was insufficient evidence for the jury to find that Crowder was deliberately indifferent to Plaintiff Younger's constitutional rights and because Crowder is entitled to qualified immunity. Crowder's arguments are unavailing.

A. **Deliberate Indifference**

The jury found Defendant Crowder liable for the assault on Plaintiff Younger based on a theory of supervisory liability under 42 U.S.C. § 1983. (*See* Jury Verdict, ECF No. 265.) To establish supervisory liability under § 1983, Younger was required to show:

> (1) that the supervisor had actual or constructive knowledge that h[is] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;

9

(2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and

(3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). To show a pervasive and unreasonable risk of constitutional injury, Younger had to produce evidence that inmate assaults were "widespread, or at least used on several different occasions and that the conduct engaged in by the subordinates poses an unreasonable risk of harm of constitutional injury." *Id.* To satisfy the second element, Younger had to "demonstrate[e] a supervisor's continued inaction in the face of documented widespread abuses." *Id.* To meet the third element, Younger had to present "direct" proof of causation "where the policy commands the injury of which plaintiff complains . . . or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Id.* Ultimately, the issue of supervisory liability "is ordinarily one of fact, not law." *Shaw*, 13 F.3d at 799.

As a pre-trial detainee, Plaintiff Younger was required to establish deliberate indifference by Crowder to prevail on a theory of supervisory liability. *See, e.g.*, *Thompson v. Friday*, JKB-18-2186, 2019 WL 6528975, at *4 (D. Md. Dec. 4, 2019) (applying traditional supervisory liability framework to claim against supervisor for subordinates' use of excessive force against pre-trial detainee); *Ozah v. Fretwell*, CCB-18-1063, 2019 WL 4060387, at *8-9 (D. Md. Aug 28, 2019) (applying "deliberate indifference" state of mind requirement in pre-trial detainee case and collecting cases for support). As this Court has previously explained, Younger did not need to demonstrate that Crowder was aware of a potential attack against

Younger specifically, but rather that Crowder was aware of a substantial risk of harm to those *like* Younger (*i.e.*, prisoners at MRDCC). (*See* ECF Nos. 188 at 26, 217 at 20-21 n. 5 (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).)

There was ample evidence at trial to establish Defendant Crowder's deliberate indifference to Younger's constitutional rights under the Fourteenth Amendment. Indeed, there is abundant testimony from Crowder's colleagues at the MRDCC revealing that they raised serious concerns with Defendant Crowder about Defendants Green, Hanna, and Ramsey's uses of excessive force prior to the assault on Plaintiff Younger. For example, Felicia Hinton, Crowder's supervisor and the assistant regional commissioner who was the previous Warden of MRDCC, testified that, prior to the assault on Younger, she told Crowder about her decision to reassign Defendant Green to a different shift and that Green "was trouble." (Jan. 22, 2020 Trial Tr. at 53-54, ECF No. 291.) Assistant Warden Suzanne Fisher testified that she also raised concerns about Defendants Green, Ramsey, and Hanna with Defendant Crowder. (Jan. 23, 2020 Trial Tr. at 20-22, ECF No. 289.) She testified that she explained to Crowder in 2012 that "Green, Ramsey, and Hanna were starting to show up on use of force reports," including sometimes on serious incident reports. (*Id.* at 21-22.) When Fisher learned that several inmates had attacked a correctional officer, she discussed her concerns with Crowder about the safety and security of MRDCC and about potential retaliation by officers against the inmates. (*Id.* at 16-19.)

Finally, Administrative Captain Raymond Pere, the administrative/investigative captain for MRDCC from November 2012 through March 2014, was responsible for investigating staff for violations of standards of conduct, including uses of force. (Jan. 23, 2020 Trial Tr. at

11

100-102, ECF No. 289.)  Captain Pere testified that, in early 2013, he approached Defendant Crowder with concerns about Defendant Green and other officers and their need for additional training on the use of force with inmates.  (*Id.* at 112-114.)  Pere also testified about his meeting with the supervisors in MRDCC where he relayed a concern about the prison staff "not performing their duties as required." (*Id.* at 123-124.)  Pere testified that the supervisors "just didn't respond." (*Id.*)

Despite these explicit warnings from Hinton, Fisher, and Pere, the record reflects that Crowder did not take any significant measures to prevent attacks on inmates.  After the assault on Younger, Ms. Hinton recommended that Crowder be terminated from his position as Warden because he did not timely notify her of the assault on inmates and "[b]ecause ultimately the warden is responsible for the actions of their staff. For the incidents that take place, present or not…" (*Id.* at 107-108.)

Crowder argues that he was not deliberately indifferent because the nature of the attack on Younger was unprecedented in his experience and because he responded reasonably after the attack on the correctional officer that resulted in the retaliatory attack on Younger. However, "the court may not make credibility determinations or weigh the evidence." *Reeves* v. *Sanderson Plumbing,* 530 U.S. 133, 150-51 (2000) (quoting *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).  This Court may only determine whether there was "substantial evidence in the record to support the jury's findings," which this Court is satisfied there was.  *See Anderson* v. *Russell,* 247 F.3d 125, 129 (4th Cir. 2001) (citation omitted).

**B. Qualified Immunity**

Crowder also argues that he is entitled to qualified immunity because his conduct did not violate any clearly established right of Plaintiff Younger. "Qualified immunity shields government officials from liability in a § 1983 suit as long as their conduct has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right . . . , and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *Id.* (quoting *Miller v. Prince George's County*, 475 F.3d 621, 627 (4th Cir. 2007)). "The answer to both questions must be in the affirmative to defeat the officer's entitlement to immunity." *Id.*

This Court has repeatedly rejected Crowder's assertion of qualified immunity, both on summary judgment and at trial. As the Court noted in its December 19, 2019 Memorandum Opinion denying Crowder's summary judgment motion on qualified immunity:

> Fourth Circuit precedent sufficiently notified Crowder that failing to take action to protect inmates from abuses at the hands of correctional officers could lead to supervisory liability under § 1983. The Fourth Circuit has recently affirmed that prisoners "have an Eighth Amendment right to be protected from malicious attacks, not just by other inmates, but also from the very officials tasked with ensuring their security" and that this right was clearly established as of April 2010. *Thompson v. Virginia*, 878 F.3d 89, 109 (4th Cir. 2017). Accordingly, qualified immunity cannot shield Crowder from Younger's claims.

(ECF No. 217 at 25.) At trial, this Court also denied Crowder's Rule 50 Motion on qualified immunity, reiterating its earlier findings on summary judgment and distinguishing *Adams v. Ferguson*, 884 F.3d 219 (4th Cir. 2019), the case upon which Crowder continues to rely. (Jan.

13

31, 2020 Trial Tr. at 6-7, ECF No. 298-2.)  The Court explained that in *Adams*, "[t]he Fourth Circuit found that the commissioner was entitled to qualified immunity because no clearly established law dictates that housing mentally ill inmates in prisons rather than transferring them to mental health facilities automatically and alone amounts to objectively excessive risk." (*Id.*)  The Court found that *Adams* "has no applicability here" where the "entire case is with respect to what is alleged to have been a lawless prison environment."  (*Id.*)  For these same reasons, this Court reiterates its finding that Defendant Crowder is not entitled to qualified immunity in this case.  In sum, this Court finds no basis for Defendant Crowder's requested relief under Rule 50, and his Motion for Judgment (ECF No. 279) is DENIED.

## II. Rule 59 Motions (ECF Nos. 279, 282)

In the alternative, Defendant Crowder seeks remittitur under Rule 59(a), requesting that the Court reduce the amount of the jury's verdict of $700,000 in compensatory damages to coincide with the evidence in the case and with judgments in similar cases.  (ECF No. 279.)  Defendant Dupree also seeks remittitur and adopts and incorporates Crowder's arguments.[2]  (ECF No. 282.)  "[J]ury determinations of factual matters such as … the amount of compensatory damages will be reviewed by determining whether the jury's verdict is against the weight of the evidence or based on evidence which is false."  *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).  This review requires a "comparison of the factual record and the verdict to determine their compatibility."  *Id.*

---

[2] While the Court will refer to "Crowder's arguments" *infra*, it is assumed that these are Dupree's arguments as well.

14

Here, the jury's award of $700,000 in compensatory damages is compatible with the factual record. The evidence presented at trial revealed that Younger endured a brutal attack by three correctional officers in his prison cell, with the officers brandishing mace, radios, and handcuffs as weapons. (Jan. 28, 2020 Trial Tr. at 41, ECF No. 296.) The officers, Defendants Green, Ramsey, and Hanna slammed Younger's head against the concrete floor and against the toilet seat. (*Id.* at 42.) The assault lasted several minutes, after which Green, Ramsey, and Hanna left Younger unconscious in a pool of his own blood. (*Id.* at 43.)

Ramsey and Green returned about an hour later to bring Plaintiff to the medical unit, where they ordered Plaintiff to write that he "fell off the top bunk," which Plaintiff did in fear for his life. (*Id.* at 48-50.) Younger sustained injuries to his face, head, wrists, ribs, right hand and right leg, and could not get out of bed for weeks due to the leg injury. (*Id.* at 51-52, 59; *see also* Pl.'s Trial Exhibit 2, ECF No. 298-8.) Younger also reported headaches and anxiety months after the attack. (Pl.'s Trial Exhibit 3, ECF No. 298-9.) He spent several months in a prison hospital to treat his leg and head injuries. (Jan. 28, 2020 Trial Tr. at 65-66, ECF No. 296.) He also saw a psychologist once a week during that time. (*Id.*) Younger returned to Maryland in 2014 and underwent surgery to repair his leg muscle in April 2018. (*Id.*) At trial, both Younger's medical expert and Defendant Crowder's medical expert agreed that Younger's injuries are permanent. Although Younger has found employment and lives on his own, he testified that he lives in persistent fear of being attacked. (Jan. 28, 2020 Trial Tr. at 71-73, ECF No. 296.) He attends a weekly support group to help with his fears and every night, he pushes a heavy dresser in front of his bedroom door. (*Id.*) Younger's permanent

physical injuries combined with his continued mental anguish and fear of harm due to the assault support the jury's award of $700,000 in compensatory damages.

Contrary to Crowder's assertion, the jury's award is not inconsistent with *compensatory* damage awards in other excessive force cases in this district. In *Butler v. Windsor*, 143 F. Supp. 3d 332, 336 (D. Md. 2015), the *punitive* damages award was reduced after a consideration of "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." These considerations are not required when reviewing a jury's award of compensatory damages. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) ("[J]ury determinations of factual matters such as … the amount of compensatory damages will be reviewed by determining whether the jury's verdict is against the weight of the evidence or based on evidence which is false.") (citations omitted). In the 1995 case, *Thorne v. Wise*, 47 F.3d 1165 (Table) (4th Cir.), the Fourth Circuit affirmed a $250,000 compensatory damages award for a plaintiff who, after fleeing police in a high-speed pursuit, was tackled and beaten by state troopers resulting in a broken jaw, fractured eye socket, a black eye, chipped teeth, and bruising.

In *Francis v. Johnson*, 219 Md. App. 531, 537 (2014), the Maryland Court of Special Appeals reduced a compensatory damages award to $300,000 for a plaintiff who was held against his will for one hour and, aside from emotional distress, did not suffer any physical or economic loss. Finally, in *McCollum v. Daniel*, 136 F. Supp. 2d 472 (D. Md. 2001), this Court reduced the jury's compensatory damages award to $1.25 million for a plaintiff who lost his

right eye and sustained permanent injury to his hand and mental anguish from the assault by three police officers, noting that "[n]either side has presented the court with a case directly parallel to this one." Similarly here, the parties have not presented the Court with a case that is directly on point to this one, and, indeed, Defendant Crowder concedes that the type of assault on Younger was "unprecedented." (*See* Crowder's Mot. At 16-17, ECF No. 279-1.) ("the evidence demonstrated that the type of assault perpetrated on Mr. Younger and others on the morning of September 30, 2013 was unprecedented.").) Consequently, after review of these cases and after comparison of the factual record in this case and the jury's verdict, this Court finds that the compensatory damages award of $700,000 was not excessive. Accordingly, Defendant Crowder's Motion for Remittitur (ECF No. 279) and Defendant Dupree's Motion for Remittitur (ECF No. 282) are DENIED.

## CONCLUSION

For the reasons stated above, Defendant Crowder's Rule 50(b) Motion for Judgment or, in the Alternative, for Remittitur (ECF No. 279) is DENIED; *Pro se* Defendant Ramsey's Motion to Stay Enforcement of Judgement (ECF No. 280) is GRANTED as unopposed; Defendant Dupree's Motion for Remittitur (ECF No. 282) is DENIED; and *Pro se* Defendant Ramsey's Motion for Preparation of District Court's Transcripts at Government Expense (ECF No. 293) is DENIED AS MOOT.

A separate Order follows.

Dated:  February 17, 2021

_____/s/_____
Richard D. Bennett
United States District Judge